ERICK OLSON, Appellee, v. THOMAS TYNER et al., Appellants.

No. 42660.

DECEMBER 11, 1934.

REHEARING DENIED APRIL 5, 1935.

Wilson & Wilson, for appellants.

W. C. Ratcliff, Chas. A. Reese, and R. J. Swanson, for appellee.

MITCHELL, C. J.—On the evening of July 3, 1931, Frank Nye, Jr., was driving a Chevrolet sedan, accompanied by the appellant Clele Tyner. They were driving from Shenandoah, Iowa, to Red Oak, Iowa, where the boys intended to call upon some of their lady friends. The distance between Shenandoah and Red Oak is approximately twenty-two miles. There is a paved highway, known as primary highway No. 48, which passes through the city of Red Oak, Iowa, and then runs due south for about twelve miles, and then turns to the west and extends in a southwesterly direction to Shenandoah, Iowa. Three miles south of Red Oak, in Montgomery county, there is a concrete culvert, which is about eighty feet in length and twenty-two feet in width between the bannisters or side walls. These side walls are solid concrete, three feet in height. On the date involved in this action, this highway was paved with a concrete slab eighteen feet in width. In passing over this culvert this paving widens two feet on either side.

Erick Olson, the appellee, on the evening of the collision involved in this lawsuit, was traveling south through Red Oak in his Chevrolet coupe. When he had about reached the culvert above referred to, he noticed a car coming from the south with only one headlight burning, and, according to Olson, the car was on the wrong side of the highway. This car was traveling northwardly, and was driven by the appellant Frank Nye, Jr., who was accompanied by

the appellant Clele Tyner, and was owned by the appellant Thomas Tyner. The cars collided on the culvert. It appears that Olson was driving with his left elbow out of the window, and the only injury that was done to him was that which was inflicted to his left arm, but this was of a very serious nature, and he was forced to have part of the arm amputated.

Olson commenced a suit, alleging that Clele Tyner and Frank Nye, Jr., were driving the car owned by Thomas Tyner with his consent, and that due to the negligence of these parties he was severely injured.

The case was submitted to a jury, and the jury returned a verdict in favor of the appellee and against the appellants in the sum of $5,470.50. The appellants filed a motion for a new trial and motion for judgment notwithstanding the verdict, and exceptions to instructions, which in due time were overruled, and, being dissatisfied with the verdict of the jury and the ruling on the motions, they have appealed to this court.

The appellants argue strenuously that they were entitled to a directed verdict, first, on the grounds that the appellee failed to prove the negligence alleged, and that the negligence of the appellants was not the proximate cause of the accident. The negligence alleged in this case was, first, the appellants' car was equipped with improper lights; second, the appellant Frank Nye, Jr., drove and operated the said Chevrolet car into and against the car in which appellee was driving, in wanton disregard of the rights of the appellee; third, that the appellants were on the wrong side of the road.

This is an automobile collision case, and, as is usual in cases of this kind, there is a sharp conflict in the testimony. There were but three eyewitnesses to this accident: Erick Olson, driving his own car, and Frank Nye, driving the Thomas Tyner car, and Clele Tyner, who was riding with Frank Nye. Olson testifies that it was dark; that there was but one light burning on the Tyner car, and that it blinded him; that at the time of the accident he was on the west side of the road and driving at a moderate rate of speed; that, as the Tyner car approached, he removed his foot from the accelerator and turned his car as far as he possibly could to the west side of the road; that the Tyner car was being driven on the wrong side of the road; and that it ran into and collided with his car. Whereas Frank Nye and Clele Tyner testify that they had turned on their lights some little distance before they reached the culvert, and that

as far as they knew the lights were burning; that they were on the right side of the road or the east side, and that the accident happened on the east side of the road. Thus we see that there is a direct conflict in the testimony of the only eyewitnesses to the accident.

■ It is the province of the jury to decide questions of fact which are in dispute. There can be no question that in this case there were disputed facts, and it was for the jury to decide which one of these conflicting stories it would believe. But the appellants argue that, regardless of the conflict in the testimony, the physical facts show that the appellants' story was correct and not that of the appellee. The physical facts referred to consisted of a mark on the floor of the bridge or culvert, which the appellants claim was made by the left front wheel of appellee's car, a mark upon the east concrete wall of the culvert, and the location of certain blood spots upon the pavement. The physical facts will not fit in with the testimony of the appellants without explanation any more than they will fit into the testimony of the appellee without explanation. In view of such a situation, it was for the jury to determine on which side of the road the accident happened. There was a conflict in the testimony, and the court properly submitted this question to the jury. But the appellants complain that the appellee was guilty of contributory negligence, because the appellee did not apply his brakes as he saw the appellants' car approaching and because he was driving with his left elbow or arm protruding out of the window and yet he did not straighten up and withdraw his arm from its dangerous position. The only injury which appellee suffered was that inflicted to the left arm, which was protruding out of the window of the car. It is the contention of appellants that ordinary care would have required appellee in such circumstances at least to have straightened up in his seat and to have withdrawn his arm to the inside of the car, where it belonged. Certainly no court could say as a matter of law that, because a man drove his automobile with his left elbow resting upon the windowsill of the door, he was guilty of contributory negligence. According to the appellee's testimony, when he saw the appellants' car approaching on the wrong side of the road he was driving at a moderate rate of speed on his own side of the road; that he removed his foot from the gas feed and pulled over as far as he could to the west side of the road. It was clearly a question of fact for the jury to decide whether under all

of the circumstances of this case the appellee was guilty of contributory negligence.

■ The next error complained of by the appellants is that, during the selection of the jury to try this case, counsel for appellee in a peculiarly effective manner disclosed to the jury that the appellant Thomas Tyner carried liability insurance upon his automobile. The appellants moved to discharge the jury and continue the case. It appears that, after sixteen of the prospective jurors had been examined, a conference was held between the attorneys representing the appellants and the appellee, with the presiding judge, at the judge's bench. The discussion concerned the question of what course should be pursued by appellee to determine whether or not there were any of the members of the jury interested in liability insurance companies. Appellants' counsel desired to have the question continued over until all of the prospective jurors had been questioned. Counsel for appellee, however, asked all of the sixteen jurors whether or not they were interested in any liability insurance company, and asked that if anyone was interested he should hold up his hand. No hands were raised. The selection of the jury then proceeded, and, after five peremptory challenges had been exhausted, three on the part of the appellee and two on the part of the appellants, the counsel for appellee proceeded to examine the additional six called to the box as to whether they were connected with any liability insurance company. One of the jurors, it appears, was the agent of the insurance company which carried the policy covering the appellant Thomas Tyner's automobile. There was another conference between the attorneys on each side at the judge's bench. Counsel for appellants informed the court and counsel for appellee that the prospective juror was the agent of the company that carried the insurance covering appellant Thomas Tyner's car, and that the prospective juror might be excused. It is the contention of the appellants that at that time the counsel for appellee used a tone of voice loud enough for all of the prospective jurors to hear. This of course is denied by counsel representing the appellee. The able and distinguished trial judge who presided at the trial was present at and heard this conference. Upon ruling upon the motion to discharge the jury and continue the case, he said:

"The conversation or conference at the bench between the attorneys and the court was not, as the court remembers, in a tone that was loud enough to be heard by the jurors; in fact, the court

had some difficulty in catching the statements that were made. The manner in which the examination was carried on, and all of it, was witnessed by the court and this court does not feel there was any intention to emphasize the fact that there was insurance."

A careful reading of the record convinces us that the trial court was right in this matter. Attorneys for the appellee had a right to ascertain whether or not any of the prospective jurors were interested in liability insurance companies. The necessity of this is proven in this case by the fact that the agent of the company that carried the liability insurance the appellant Thomas Tyner had on his car was one of the prospective jurors called. The manner in which the attorneys for the appellee handled this matter seems to us to show that they had no desire to inject the question of insurance into this case, but they had a desire, and rightly so, to determine whether or not any of the prospective jurors were interested in liability insurance companies, and, as it happened, the very agent of the insurance company that wrote the liability policy was one of the prospective jurors. We believe that the lower court was right in overruling the motion to discharge the jury and continue the case.

The appellants complain of certain instructions given by the court to the jury, including instruction No. 6. An unfortunately worded instruction by the trial court is not reversible error if its meaning is sufficiently clear. Judge Stevens, speaking for this court in the case of Schevers v. American Ry. Exp. Co., 195 Iowa 423, 426, 192 N. W. 255, said:

"The criticism of instructions 6, 7, and 8 is hypercritical and without merit. There is no reason to believe that the jury were misled or confused thereby. Like most instructions, they could have been correctly stated by the use of different phraseology, but this does not make them erroneous."

A careful analysis of all, of instruction No. 6 taken together clearly shows that the jury could not have been misled and the appellants could not have been prejudiced by the somewhat unfortunate selection of words used by the trial court. This instruction, taken in its entirety, clearly defines the term of "negligence" as it is generally used by trial courts of this state. It is not to be presumed that the jury were so unintelligent that they could have been misled by this instruction. Considered as a whole, it is correct, and no prejudice or reversible error resulted from its use.

The appellants argue that the verdict was the result of passion and prejudice of the jury, setting out among other grounds the following: That the appellee in his examination in chief was required by his attorneys to strip to the waist and stand before the jury as an exhibit, during most of his examination and during all of the examination of his doctor. The appellee showed a perfect physique in every respect except his left shoulder and arm, which had shrunk and shriveled to such an extent that by comparison with his right shoulder and arm, they presented a most pitiable sight. During his examination and during the examination of his doctor, while he was standing as an exhibit before the jury, he was asked to raise this left stump of an arm and to move it, and he apparently tried to do so but could not. All he could do was to swing it by swinging the left side of his body, which in turn would swing the hanging stump. Dr. Riley explained that by reason of the atrophying of the muscles and flesh of his left shoulder and arm, this arm stump had dropped out of its shoulder socket and hung below in the neighborhood of an inch, so that his left arm dangled by his side as though it were suspended by a string. "The sight was such as to excite the sympathy of everyone in the courtroom. The showmanship was perfect and we believe it had the desired effect upon the jury. We think the jury disregarded all evidence and decided that this poor boy should receive a donation from the insurance company."

Certainly the appellee had a right to exhibit to the jury his arm to show the condition he was in. Part of the arm had been amputated. The use of the entire arm was lost. The exhibiting and showing of the condition of his arm to the jury was simply showing the injury that he had suffered, and this could not be interpreted as creating passion and prejudice.

Many other errors are urged, all of which have been given careful consideration. There was a sharp dispute as to how the collision occurred. It was submitted to the jury upon proper instructions, and the jury returned a verdict in favor of the appellee.

We find no error in the record, and the judgment of the lower court must be, and it is hereby, affirmed.

STEVENS, ANDERSON, ALBERT, KINTZINGER, and DONEGAN, JJ., concur.