ISABELLE MCMANUS, Administratrix, Appellee, v. EMMETSBURG
FARMERS CO-OPERATIVE CREAMERY COMPANY, Appellant.

No. 42772.

APRIL 2, 1935.

Morling & Morling, for appellant.

J. R. McManus, Huebner & Huebner, and Kelly & Kelly, for
appellee.

ALBERT, J.—The accident out of which this cause arose oc-
curred about 11 o'clock a. m. on June 16, 1931, on state highway
No. 44, at a point one and a half miles south of the town of Rolfe,
in Pocahontas county. Highway No. 44 is an improved highway,
running north and south, with a graveled surface about 28 feet in

width. The deceased was driving a Chevrolet coupé, and the employee of the defendant was driving a one and one-half ton Chevrolet truck. Both cars were traveling north on said highway, the coupé being in the rear. The coupé was driven by the deceased Frank O. McManus, and the truck was driven by August Nielsen, an employee of the defendant.

Two major questions are raised in the case by the defendant. It is insisted, first, that the plaintiff has failed to show actionable negligence upon the part of the defendant; second, that under the evidence, the deceased Frank O. McManus was guilty of contributory negligence as a matter of law. These questions necessitate a review of the testimony.

The principal witness, aside from the driver of the truck, was one A. W. Ives. He testifies that he is a farmer, and lives on highway No. 44, south of where the accident occurred. He had been plowing corn and drove out onto highway 44 and started north toward his home. The creamery truck passed him, going at the rate of 35 miles an hour, at a point about 110 rods south of where the accident occurred. The box on the truck extended approximately two feet beyond the cab on each side, and the milk cans were set up behind the glass in the back of the cab. Shortly after the truck passed him, the Chevrolet coupé also passed him, going in a northerly direction.

"I observed the coupé and the truck as they proceeded on north. I was approximately 80 to 90 rods south of the Hosier driveway when the accident occurred. I observed the truck turn rather abruptly to the left. The truck had slowed down considerably, very much so. From where I was I could see no signal whatever given by the truck, and no horn sounded. I heard none. The coupé traveled on the west (left) side of the highway, and made a left turn to some extent to pass the truck shortly before the accident. I couldn't see McManus in the car, or what he was doing. Neither could I see Nielsen in his truck. I hastened to the scene of the accident and found McManus on the west side of the road. He was unconscious. He was taken to the hospital at Rolfe, and later died. At the time McManus passed me he was driving at approximately 50 miles an hour and maintained that speed until almost the scene of the accident, when he put on his brakes. I noticed no damage on the coupé when it passed me. Exhibit A is a correct picture of the coupé immediately after the accident. I couldn't tell

whether the truck ran into the coupé or the coupé ran into the truck. The speed of the McManus car attracted my attention; it stirred up some dust. McManus applied his brakes 40 to 50 feet before the accident occurred. In my judgment, the left front wheel of the truck was a foot and a half to the left of the center of the road, to the west. There were no cross-roads; there was a private driveway going west from No. 44 to the house of Hosier, which was a short distance from the east fence of the Hosier place. When the truck stopped it was about 20 feet north of the place where the accident occurred, and the whole truck was about the center of the right half of the road. After the accident I went back to look at the place where it occurred, and the tracks made by the McManus car were crooked. I would say he had applied the brakes and dug quite deeply into the ground. It appears that the wheels were not all slanting, but a part of them."

Nielsen (the truck driver) testifies that when he passed Ives he was traveling about 25 miles per hour, "at no time exceeding 30 as I went north. I was going to the Hosier place. As I approached that place, I just let the motor slow down, commencing at a point about 20 rods south of the Hosier driveway. I didn't use the brakes at all. Reduced my speed to about 5 miles an hour. My truck was equipped with brakes. They were in good shape, and good working order. As I slowed down I put out my arm as far as it would go and listened for a horn. My arm would extend beyond the box of the truck about 12 inches. I extended my arm at a point at least 75 feet south of the driveway. Didn't know there was any car coming from the rear. My load didn't make any noise to speak of. Had no difficulty in hearing the approach of a car from the rear. I have no trouble in hearing. When about 20 rods back I let up on the foot feed and slowed down. I let the truck go and steered it. When I went to make the turn I pulled my arm in to use it to make the turn. I just started to make the turn. I was possibly in the middle of the road. All at once the car came and just hit the front end. It happened so quick I didn't know what it was about. Kind of straightened my truck out. I seen the other car roll on over in the ditch. It threw McManus to the ground, and he was laying on the ground. The car was sitting there in the ditch. I shut the motor off and ran over to see Mr. Mc-Manus. This car struck the truck and threw it sideways, and it rolled over twice and landed on its wheels and came to a stop.

McManus was thrown through the top of his car, and possibly 15 or 20 feet in the air, and some beyond his car. The front wheels of the McManus car were just on the edge of the gravel and the back wheels were down in the ditch. I went back to the house and telephoned for a doctor. I didn't see Mr. McManus or his coupé until the impact occurred, and I saw him flying in the air. There were cans piled up behind the box so I couldn't see through the back window. I had no way of seeing to the rear while I was sitting there in the driver's seat. I was sitting back of the steering wheel, with my back against the back of the seat, holding the steering wheel. At the time the impact occurred, the left front wheel of my truck was a foot or a foot and a half over the center line of the graveled part. The left end of the front axle was sprung back and there was a mark on the rim of that wheel and a slight cut in the tire. There was no damage to the front end of the truck. There was damage to the side of the front fender. The box sticks out beyond the side of the cab $14\frac{1}{2}$ inches."

Other testimony was introduced, together with photographs of the car and the truck after the accident. The photographs of the coupé were introduced in evidence, one showing the right side with the door bearing a large indentation, the running board mashed, and indentations on both the front and the rear fenders. The photograph of the truck, aside from the left end of the front axle being sprung back, shows a mashing of the left front fender.

Other witnesses testified that the rack on the truck extends at least two feet beyond the cab on the truck, and there was also evidence from which the jury could find that, even though Nielsen testified that he extended his hand and arm, it could not be seen by some one driving a car from the rear. The evidence in the case further shows that, while the truck had two mirrors for rear observation, yet, on account of the construction of the truck and the load of cans, neither of them was available for that purpose.

Under the evidence in the case the jury might have found that Nielsen was negligent in abruptly turning to the left without giving any signal to the driver of the car approaching from the rear, and that he was also guilty of negligence in failing to look to see whether there was any car approaching from the rear.

Section 5032 of the Code reads as follows:

"The operator of a motor vehicle shall, before stopping, turning, or changing the course of such vehicle, first see that there is

sufficient space to make such movement in safety and shall give a visible or audible signal to the * * * drivers of vehicles following, of his intention to make such a movement, by raising and extending the hand or by a proper signal or device indicating with it the direction in which he wishes to turn."

Under this section of the statute the driver of the truck was bound to take notice of the condition of his car, and the fact that while he was sitting in the truck, with his back against the cushioned seat, if he did extend his arm and hand, they did not reach beyond the side of the rack on his truck and therefore he was not, in this respect, complying with the requirements of the statute.

A different situation exists in this case than that which existed in Isaacs v. Bruce, 218 Iowa 759, 254 N. W. 57, where the rear car was immediately following the head car, as in this case the evidence shows that the truck was traveling on the right side of the road, where it belonged, and that the McManus car was traveling on the left side of the road at all times in controversy. The fact, under our holdings, is that, on a country road of this character, the rear car had a right to travel at any place it saw fit on the highway, until it reached a point where it was attempting to pass the head car. Therefore, the fact that McManus was traveling on the west side of the road was not negligence on his part. In fact had he been following the truck, he would have been compelled to turn to the left side of the road to pass the same. The jury might have found from the record that the truck driver, in attempting to turn to his left, did not "first see" that there was sufficient space to make such movement in safety. In other words, the statute puts the duty on the driver of the truck, under circumstances of this kind, to look forward as well as to the rear, and the driver of the truck failed to look to the rear, and did not "first see" that there was sufficient space to make such movement in safety.

We think, after a careful review of all the record in the case, that the question of negligence on the part of the defendant was a question for the jury. As to the question of contributory negligence on the part of the decedent, which is so seriously urged by the appellant, we have to say that we think this also was a question for the jury. We have said in previous cases that speed alone is not sufficient to constitute negligence, but in determining the question of negligence speed is an element that may be taken

into consideration with all the other surrounding facts and circumstances, and when so considered may be found by the jury to be negligence. There is no statute in this state providing that when the rear car seeks to pass the car ahead of it, it must sound an alarm or in some way notify the driver of the forward car of the intention to pass it. Ordinarily, the question of contributory negligence is a jury question, as we have said many times. The only thing urged by the appellant herein as showing contributory negligence is, in reality, the speed at which the McManus car was traveling. Under the circumstances, we feel that the question of contributory negligence was a question for the jury, and both of these questions having been submitted to the jury and a verdict returned thereon, we are not disposed to disturb such finding.—Affirmed.

ANDERSON, C. J., and DONEGAN, MITCHELL, PARSONS, HAMILTON, RICHARDS, and POWERS, JJ., concur.