MINNIE E. McWILLIAMS, Executrix, Appellant, v. LOREN BECK, Appellee.

No. 43051.

OCTOBER 15, 1935.

REHEARING DENIED JANUARY 24, 1936.

Watson & Watson, and Hirsch, Riepe & Wright, for appellant.

Hallagan, Fountain, Stewart & Cless, Paul Steward, and Stanley E. Prall, for appellee.

MITCHELL, J.—According to statistics, in the year 1934 a person was killed every fifteen minutes and someone seriously injured every fifteen seconds of every hour of every day of that year, in an automobile accident. These startling figures have caused legislatures of the various states to pass laws in the hope and belief that the number of deaths and injuries due to automobile accidents might be reduced; and courts by strict enforcement of these laws, by the placing of responsibility for the accident upon the one to blame, have hoped to drive from the highway the speed maniac and the careless, indifferent, inconsiderate driver.

Out of one of these accidents grew the suit that is now before us—an action brought by the estate of Dr. McWilliams on account of his death, which resulted from a collision between the truck of the defendant, driven by his brother and employee, and the automobile belonging to and driven by the doctor. The defendant answered by admitting that the plaintiff's decedent died as a result of injuries sustained when an automobile owned and driven by the said Dr. McWilliams struck and collided with a motortruck owned by the defendant, and denied negligence on the part of the person driving the defendant's truck, averring that the sole, direct, and proximate cause of decedent's death was the negligence of decedent.

At the conclusion of the evidence for plaintiff, defendant's motion for directed verdict was overruled. After both sides had

rested, defendant renewed his motion for directed verdict in his favor, which motion was sustained. The plaintiff has appealed from the ruling on said motion and from the verdict for defendant as directed by the court.

The accident out of which this controversy arose occurred on paved highway No. 161, a short distance north of the town of Crawfordsville, Iowa. This road runs north and south, and the collision occurred at a point between 450˙ and 600 feet south of the top of a hill. At or near this point there was a stalled truck standing on the east half of the pavement, with possibly the right front wheel on the shoulder, but in such a position as would naturally block that half of the paved portion of the highway. This truck belonged to the Redman Transfer Company of Ottumwa, and was being driven north on this same highway early in the morning of January 16th. When it reached the point above described, there was some difficulty with the motor and the driver was forced to stop. The truck was about 20 feet long, 8 feet wide, and 10 feet from the ground to the top. It was a refrigerator type truck, with a solid box. The driver attempted to fix the motor, but was unsuccessful. He then put out lighted flares, one about 75 feet to the north, one on the west side of the truck along the middle of the paved road, and one 75 feet to the south of the truck, and then he proceeded to town to secure help.

A couple of hours later, about 4 a. m., Richard Beck, driving a large truck belonging to the defendant, from St. Louis to Des Moines, with the defendant Loren Beck sleeping in what is known as the "sleeper"—a compartment in the truck in which the relief driver can sleep while the truck is being driven—noticed the flare to the south of the Redman truck (which is referred to in this opinion as the "stalled" truck). The truck Beck was driving was a tractor-trailer type made by the Dodge Company. The length of the tractor and trailer was approximately 34 feet, the trailer being 20 feet long. The weight was a few hundred pounds less than 14,000 pounds. The truck was loaded with beer from Anheuser-Busch, being shipped to the C. C. Taft Company at Des Moines. The total weight of the load was a little more than 21,000 pounds. It took some 20 or 30 feet in which to turn the Beck truck from one side of the road to the other. According to Beck's testimony, when he reached a point about 100 feet south of the stalled truck he turned his truck to the left-hand side of the road and proceeded north. When he

started to turn to the left-hand side of the road, he looked to see if there was any car approaching from the north and saw none. Neither did he see a car approaching until he had reached a point about 8 or 10 feet behind the stalled truck, at which time he was on the left-hand side of the paved road. He then saw the lights of a car coming from the north some 500 to 600 feet away. Beck was traveling at a rate of speed between 15 to 20 miles an hour, and it was impossible for him to get in behind the stalled truck because he was too close, and he believed he had ample time to pass the stalled truck and turn to the right-hand side of the road before the other car would reach that point. He proceeded on the left-hand side of the road, and when he reached a point some 15 to 20 feet north of the stalled truck and while his truck was still on the left-hand side of the road, the car from the north, driven by Dr. McWilliams, ran into the side of the cab of the tractor of the Beck truck. The Beck truck then proceeded in a northwesterly direction a distance of some 55 feet before it came to a stop. In this collision Dr. McWilliams was killed, and this action is brought to recover damages on account of the loss of his life.

██ It is the well-settled law of this state that the court in passing upon a motion to direct a verdict against the plaintiff "must view the evidence in the light most favorable to the plaintiff. Every inference reasonably permissible in support of the issue should be carried to the aid of the evidence." Bauer v. Reavell, 219 Iowa 1212, 1219, 260 N. W. 39, 43.

There are two main questions raised in this appeal. The first is: "Was there sufficient evidence of negligence on the part of the driver of the Beck truck to submit this question to the jury?" There are several grounds of negligence alleged in the petition. We do not find it necessary to discuss all of them.

██ Appellant alleges as one of the grounds of negligence the fact that appellee failed to yield one-half of the traveled portion of the highway. Yielding one-half of the traveled portion of the highway is a duty placed upon an automobile driver by statute, and failure to meet this duty is prima facie evidence of negligence. The record shows without dispute that in the case at bar the accident happened on the west side of the road. It is the appellee's theory that his truck was turned to the left-hand side of the road 100 feet back of the stalled truck, and that his driver did not see the oncoming car until he had reached a point

about 10 feet back of the stalled truck, at which time it was impossible for him to turn back to the right side of the road due to the fact that his truck was 32 feet long and it took between 20 and 30 feet to turn it from one side of the road to the other. It is the appellant's theory that the driver of appellee's truck emerged unexpectedly from behind the stalled truck on the highway, striking appellant's decedent's car on its side of the road. When the appellee's driver attempted to go around the stalled truck, he was charged with the duty of using care commensurate with the dangers incident to such a situation, which included the danger of meeting an automobile coming from the opposite direction on its own side of the highway. He knew that due to the length of the vehicle he was driving, the weight of the load, and the space it took to turn from one side of the road to the other, he needed considerable time to get around the stalled truck. In addition to this, it must be kept in mind that this accident happened on a dark night. There is evidence in the record to sustain the contention of the appellant, and there is evidence in the record to sustain the contention of the appellee. Thus there was a conflict in the testimony. The question was for the jury to decide. As this court said in the recent case of Olson v. Tyner, 219 Iowa 251, at page 254, 257 N. W. 538, 539:

"It is the province of the jury to decide questions of fact which are in dispute."

In the case of McManus v. Emmetsburg Farmers Co-Op. Creamery Co., 219 Iowa 860, at page 864, 259 N. W. 921, 923, this court said:

"The statute puts the duty on the driver of the truck, under circumstances of this kind, to look forward as well as to the rear, and the driver of the truck failed to look to the rear, and did not 'first see' that there was sufficient space to make such movement in safety."

In the case at bar the statute puts the duty on the driver of appellee's truck, under circumstances of this kind, to yield one-half of the traveled road, and failure to do so is prima facie evidence of negligence.

Another ground of negligence alleged was the failure of appellee's driver to keep a proper lookout. It was his duty to see that he could pass the stalled truck before he started to do

so. True, the driver of the truck says he did look; he says he turned to the left-hand side of the road 100 feet back of the stalled truck, and in looking ahead, having a clear view, did not see a car approaching; when he reached a point 8 to 10 feet back of the stalled truck and while still on the left-hand side of the road, he saw for the first time a car approaching from the north, which was at that time a distance of 500 to 600 feet away. Appellee was traveling at a rate of 15 to 20 miles an hour. His truck covered a distance of approximately 50 feet from the place where he first saw the lights of the oncoming car to the point where the accident happened. In this period of time, according to his theory, appellant's decedent's car was driven a distance of between 500 to 600 feet. In other words, the McWilliams car was being driven ten times as far as the truck, which would mean that the rate of speed at which it was traveling would have had to be in excess of 100 miles per hour. The jury might have found that the driver of the truck was wrong when he thought the McWilliams car was 500 to 600 feet to the north; he misjudged the distance, because of course it was a physical impossibility for the McWilliams car to cover the 500 to 600 feet in the period of time which it would have had to had it been 500 to 600 feet north of the stalled truck at the time the driver of the Beck truck said he first saw it. Opposed to this is the theory of the appellant, sustained by two witnesses who were riding in the car, that they did not see the lights of the truck until they were almost upon the truck, and that at that time it was impossible to avoid the collision. So we have here a conflict in the testimony. We do not say which one of these theories is correct, but we do say it is for the jury to determine which one was right, and not for the court to direct a verdict.

In the case of Young v. Jacobsen Brothers, 219 Iowa 483, at pages 485, 486, reported in 258 N. W. 104, at pages 105, 106, speaking through Justice Anderson, this court said:

"Under this record it cannot be seriously contended that the question of the defendants' negligence was not one for the determination of the jury, and we will not needlessly extend this opinion to discuss this proposition. * * * Under the circumstances, as disclosed by the record, the appellee had the right to assume that the truck would not be deliberately driven into him, and he did not know, and could not have known until the instant

of the collision, that the truck would not be pulled over to its own right side of the road before a collision could occur. The plaintiff did not drive contrary to any statute, and there is no assurance from the record that the collision would not have occurred had the plaintiff stopped his car even after having driven off of the pavement. It is true the plaintiff testifies that he could have stopped his car within five feet, but the question is: What was the assured clear distance ahead, if there was any under the circumstances, and what would an ordinary, careful, and prudent person do under the circumstances at that instant existing? Appellants argue further that the appellee was in a position to have avoided the accident, and they further use the following language in their brief and argument: 'He saw appellants' car approaching on appellee's side of the road. He knew that appellants would either remain on that side of the road or would be compelled to turn sharply to appellants' right hand side of the road or go into the ditch on the left side of the road. In any event appellee did know that to proceed was a dangerous course.' Of course, appellee could see that if the appellants' truck continued in its course it would either go into the ditch or collide with appellee's car, but how was he going to avoid such a result? Bringing his car to a stop would not have changed the course of the truck, and a collision more disastrous than the one that occurred would no doubt have resulted. We do not think there is any merit in appellants' contention at this point. Contributory negligence is usually a question for the jury to determine, and under the facts in this case, we are satisfied that the question of contributory negligence was one which was properly submitted to the jury.''

■■■ We come now to the more serious question, that, as a matter of law, the appellant's decedent was guilty of contributory negligence. This is argued strenuously by the appellee, upon two grounds: first, that Dr. McWilliams did not maintain a proper lookout; and, second, that he was negligent in violating the ''assured clear distance ahead'' statute.

Let us examine the record as to the evidence offered by the appellant, remembering that for the purposes of this case it must be regarded most favorably to appellant.

Riding with Dr. McWilliams were Mr. and Mrs. Freshwater. Mrs. Freshwater was sitting in the front seat with the doctor.

Her testimony and that of her husband is that they were driving along at a rate of 30 to 35 miles an hour; that when they reached a point about 300 feet from the stalled truck they noticed the flares, which were the warning signs put out by the driver of the disabled truck; that the doctor reduced the speed of his car to approximately 25 miles per hour; that at that time Mrs. Freshwater was looking down the paved highway and had a clear view and saw no car approaching from the south, and they proceeded on their journey; that the Beck truck did not appear in sight until just shortly before the accident; that the doctor in the emergency which confronted him, in attempting to avoid a collision, tried to turn his car to the right, but was unsuccessful, and the truck and automobile collided. At the time they first saw the stalled truck it would have been in direct line of vision between Dr. McWilliams' car and the approaching truck. The disabled truck was the refrigerator type, 10 feet high and 8 feet wide. Even if Dr. McWilliams saw the approaching truck the same distance to the rear of the stalled truck that he was in front of it, he had a right to assume that the approaching truck would wait for him under its driver's obligation to yield to him one-half of the traveled way. He had a right to continue his passage as he did, at a reduced rate of speed. He did not have to anticipate that the approaching truck, even if visible, would turn to the side of the road on which his car was traveling. True, the appellee's evidence shows that his truck was on the left-hand side of the road for a distance of 100 feet behind the disabled truck. If it was, then there was no reason why Dr. McWilliams could not have seen it. But there is a conflict in the testimony as to whether it was or was not, and it was a question for the jury to say which of these witnesses it would believe.

The appellee argues that Dr. McWilliams was negligent in violating the "assured clear distance ahead" statute. The legislature has given us a definite standard, combining the duty to see discernible objects with definite regulations as to the conduct of the motorist after such discovery. This is section 5029 of the 1931 Code, and has been before this court in a great many cases in the last few years. The statute is usually applied to cases where the automobile strikes an object traveling in the same direction or strikes an object standing upon the highway, but this court has said that the rule applies as well to cars meeting on the highway. Albert v. Maher Bros. Trans. Co., 215 Iowa 197,

243 N. W. 561; Hoegh v. See, 215 Iowa 733, 246 N. W. 787; Caudle v. Zenor, 217 Iowa 77, 251 N. W. 69.

Let us look at the evidence in this case to see whether or not as a matter of law appellant's decedent was guilty of contributory negligence in failing to comply with the assured clear distance ahead statute. Again we are confronted with a dispute in the testimony. Appellant's evidence shows that the truck was not visible until about the time of the collision; appellee's evidence shows that he was on the left-hand side of the road for a distance of several hundred feet. Appellee argues that the physical facts sustain his contention. Let us see whether or not they do. The driver of appellee's truck did not see the McWilliams car until he had reached a point 8 to 10 feet behind the stalled truck, and at that time the McWilliams car was, according to appellee's contention, 500 to 600 feet north of the stalled truck. Between the time that the driver of appellee's truck saw the oncoming McWilliams car, he drove a distance of approximately 50 feet at a rate of speed of 20 miles per hour. While he was traveling that distance, if his story is to be believed, the doctor was traveling 500 to 600 feet. In other words, the doctor's car would have had to travel at a speed in excess of 100 miles an hour. It was a 1929 Dodge that had traveled 50,000 miles. In this day, when we are all so familiar with automobiles, it is doubtful if any one would believe that the doctor's car could have traveled at a rate of speed necessary to cover the distance the driver of appellee's truck says it did. In other words, the question was for the jury to decide, not for the court.

In the case of Schuster v. Gillispie, 217 Iowa 386, at page 388, 251 N. W. 735, 736, this court said:

"It may be conceded that the laws of the state of Iowa impose upon the driver of every car the duty to drive the car upon the highway at such a speed that it can be brought to a stop within the assured clear distance ahead, but it does not follow that the statute imposes an imperative duty upon the driver to stop the car in every conceivable circumstance before colliding with objects upon highways. * * * As the cars were driven toward each other, the driver of the Schuster car [the plaintiff's] had a right to assume that the defendant's car would be diverted to the east side of the road, because the law required the driver of the defendant's car to yield him one-half of the traveled por-

tion of the road. When the defendant's car came on the highway, it was 200 feet or more from the Schuster car. The Schuster car could be stopped within a distance of 40 feet. It was not the duty of the driver, as a matter of law, to bring it to a stop. It may be that under all the circumstances he had the right to proceed at a rate of speed which was reasonable. While driving the car at a rate of speed complying with the statute, the duty resting upon the driver of the Schuster car was to use reasonable care under all the facts and circumstances, and whether or not he used such degree of care was a question of fact for the jury. * * * It is undisputed that, when the Gillispie car [defendant's car] first came upon the highway, the Schuster car [plaintiff's car] was being operated at a rate of speed which would have permitted it being brought to a stop within the assured clear distance ahead. In this situation it cannot be held as a matter of law that the cause of the accident was a failure of the driver to have the car under such control that it could be stopped within the assured clear distance ahead.''

In the case of Lindquist v. Thierman, 216 Iowa 170, at page 178, 248 N. W. 504, 508, 87 A. L. R. 893, this court said:

''This duty [the duty to stop within the assured clear disance] does not extend so far as to require that it must always be possible to bring the car to an immediate stop on the sudden arising of a dangerous situation which the driver could not reasonably have anticipated.''

This court has so frequently stated, that it needs no citation of authority, that ordinarily questions of negligence and contributory negligence are for the jury. There are some cases where the court is justified in directing a verdict; but in the case at bar, in view of the conflict that there was in the testimony, in view of the fact that the collision occurred on the west side of the road, this was clearly a case for the jury to decide. The lower court was in error in directing a verdict, and judgment and decree of the lower court is hereby reversed.—Reversed and remanded.

KINTZINGER, C. J., and ANDERSON, POWERS, HAMILTON, and PARSONS, JJ., concur.