EDWARD GOETZ v. HYDRAULIC PRESS BRICK COMPANY, Appellant.—9 S. W. (2d) 606.

Division One, July 3, 1928.

*Eliot, Blayney & Bedal* for appellant.

*Thomas L. Anderson, James F. Green* and *Ernest A. Green* for respondent.

RAGLAND, J.—This is an action for personal injuries alleged to have been caused by the negligence of the defendant.

Plaintiff was an experienced clay miner; he had operated mines for many years, both for himself and for others. In the early part of August, 1920, he was prospecting for fire clay in the vicinity of Rosebud, a station on the Rock Island Railroad, in Gasconade County. He had a nephew living at Rosebud, Fred Janssen. Janssen was at the time engaged in directing the operation of a fire clay mine near Johnson Spur, a railroad spur extending out from the main line of the Rock Island at Rosebud. While so prospecting plaintiff was told of a rich clay deposit not far from Rosebud. He was not acquainted with the owner of the supposed deposit, but Janssen was. Plaintiff thereupon sought out his nephew for the double purpose of securing through him an introduction to the owner and of forming with Janssen a partnership for mining the clay, if it could be obtained from the owner. He went to Janssen's house on the evening of August 16, 1920, and spent the night there. While he was there it was arranged between him and Janssen that the latter would secure an automobile the next morning and drive plaintiff to see the owner of the clay deposit and the deposit itself. The next morning Janssen told plaintiff that he would first have to go over to the mine where he was directing operations and give some orders to the men employed there and that he would then get a car from one of them for their trip. Plaintiff walked over with him, and while Janssen went on to one of the clay pits to give directions to the men at work there, plaintiff remained near a blacksmith shop on the premises, standing just outside an open door. The shop was a small wooden building seven or eight feet by twelve; the work done in it was principally that of sharpening the points of the picks

and drills used in the clay mining. But the building was also used as a storage place for dynamite, percussion caps and fuses, used in the mining operations. After plaintiff had been standing at the place just indicated for an interval of about twenty minutes there was a terrific explosion of the dynamite within the shop. He was seriously and permanently injured.

The mine was owned by defendant, but was being operated by Janssen, whether as an employee of defendant, or as an independent contractor, does not at present concern us. One Trowbridge was defendant's general superintendent. Several months prior to the occurrence giving rise to this controversy he had given plaintiff a general invitation "to drop in on them" and see the mine whenever he was in that part of the country. But as already appears plaintiff's presence on defendant's premises on the morning of August 17, was purely incidental to an adventure which he and Janssen were about to undertake and one with respect to which defendant was in no wise concerned. What occurred and what he observed while there, prior to the explosion, can be gleaned from his testimony:

"After Janssen told me to wait, on the 17th of August, I was waiting there and the blacksmith was working in the shop and I was standing about two feet from the door and a box of dynamite was standing about a foot inside the door. The blacksmith was looking for a bolt to repair some boxes. There was about thirty sticks of dynamite in the box which was open, and caps and fuses, and just as I happened to look down in the box I saw a little smoke coming out of the box and that very second the dynamite exploded and it blew me away. Prior to the explosion I saw the blacksmith fetch off a piece of hot steel, he got it heated in the forge and he wanted to put a point on it, what they call a rock point, not a square point. When he sharpened that there was a flaw in it, he cut that off, reheated it, and when he cut it off the piece of steel flew over and hit the wall over the dynamite box. It hit about three or four feet above the box. I noticed it hit the wall and fall. About fifteen or twenty minutes after that I saw the smoke in the dynamite. It exploded the second I saw the smoke. . . .

"I saw George Stein, the blacksmith's brother, load some cartridges there that morning. He was the blaster working in this mine. I saw him loading cartridges as they call them. . . .

"After Janssen left me standing at the blacksmith shop it was fifteen or twenty minutes before I was hurt. The blacksmith was gone when I got there, but he came and walked in the shop. I had been standing there about twenty minutes before the blacksmith came. He walked in and started to look for a bolt, and he said he couldn't find the size bolt he wanted. He had a big box with

bolts in it; he was raking around in there. Then I saw this box of dynamite. The box was standing right next to the south door. From the south edge of the door was about a foot from the box. From the south edge of the door and south wall of the shop was about two feet, just about enough room to hold the box. From where I was standing I could look in the door and see the box of dynamite. I just happened to look at the box and saw a little smoke coming out of it and then it exploded, just the second I saw the smoke.

"Q. Now, why did you say yesterday that while he was standing there the blacksmith was chipping a piece of red hot iron? A. Well, that was before that, that was the second time we were at the shop.

"I was with Fred in the shop first. I was standing then at the other door and the anvil was right inside the other door and the blacksmith was heating a piece of iron and when he cut it off it flew and hit the wall over the dynamite box. We went to the blacksmith shop twice. The first time was about twenty minutes before the explosion. The blacksmith was in the shop then. Then he went away and came back again. He went down in the mine and he came right back looking for a bolt. The first time I walked right to the shop with Fred and came right in the north door and Stein was cutting off that iron on the anvil in the shop. I was right inside the door talking to Fred. I should say he did cut iron. He cut a point off on a rock drill—rock point it was rather; it was steel, steel point; rock point, they call them. They square them on the end, four corners, and I judge it was about eighteen or twenty inches long, and about seven-eighths or an inch thick. They use them for dressing down rock. One man holds it, and the other man hits it with a hammer and chips off rock. He went to sharpen it and there was a flaw in it, a defect, and he cut it off. He re-heated it and cut off a piece. I saw him do it and the piece of iron hit over the box against the wall. I never thought about the dynamite at all. Janssen was with me when Stein cut off the iron. Then Stein left and Janssen told me to wait and he left and then Stein came back again. We three walked out of the shop together and Stein and then Janssen went down in the pit. Stein did not come back for about twenty minutes. I was standing there in the shade of a big tree waiting for Janssen. Where I was standing two feet on the outside of the door I could see the box. I didn't have to stick my head in. The box was about 2 by 3 feet. There was no wall in front of the box; the box was a foot from the door back into the shop. The box was on the ground. It was a foot from the door sill. The box extended out from the door a little because I stood about the center of the door and I could look right in the box. There

was a double row of dynamite, one on top of the other, about eighteen or twenty inches long.''

The petition on which the cause was tried was as follows:

''Plaintiff states that the defendant is, and was at all the times hereinafter mentioned, a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and at all said times was operating a fire-clay mine near the town of Rosebud, Missouri, from which mine fire clay ore was mined and taken, and in the conduct of its business and in connection with the mining of said fire clay, defendant kept on hand and stored very high and dangerous explosives, dynamite and percussion caps in a certain blacksmith shop situated near its said mine and on the premises connected therewith.

''Plaintiff further states that on the 17th day of August, 1920, at the request and upon the invitation of the defendant, he was upon said premises, and at and near said blacksmith shop a violent explosion of said explosive so kept and stored by defendant in said blacksmith shop took place whereby said blacksmith shop was blown to pieces and the plaintiff was thereby blown and thrown high in the air, and by reason thereof was burned and injured as follows:

''Plaintiff further states that said explosion and the plaintiff's said injuries were directly due to and caused by negligence on the part of the defendant. [Then follows an assignment of the damages suffered with a prayer for their recovery.]''

The answer, following a general denial, averred that Janssen was operating the mine as an independent contractor.

On a trial to a jury plaintiff obtained judgment for $24,370; the cause comes here on defendant's appeal.

Appellant assigns as error the refusal of the trial court to give its instruction in the nature of a demurrer to the evidence at the close of the case. Such refusal was error, appellant alleges, for two reasons: First, there was no substantial evidence tending to show that defendant was operating the mine at the time of plaintiff's injury; and, second, that the evidence does conclusively show that plaintiff's relation to defendant, while the former was on the mining premises, was at most that of licensee, to whom defendant owed no duty other than that of refraining from wilfully or wantonly injuring him.

It is difficult to determine from the record the specific legal theory under which plaintiff predicates liability on the part of defendant. His petition charges general negligence, although a case in which the *res ipsa loquitur* rule can have no application; the only instruction he asked was one on the measure of damages; and the facts he put in proof show in their ultimate analysis merely that under a general invitation to visit defendant's premises he did so, and while

there was injured by an explosion of dynamite which had been stored in a blacksmith shop. What was the duty owing plaintiff by defendant which it breached? He was not an occupant of adjoining premises. He was not on a near-by highway or other public place. By his own averment he was on defendant's premises merely as an invitee. As such the defendant owed him no duty with respect to the selection of a place in which to store its dynamite. But, if storing it in a blacksmith shop rendered the premises dangerous, it was bound to give him timely notice of such storage and the attending danger, unless both were obvious. On the other hand, if plaintiff became apprised of the alleged dangerous situation and continued thereafter to remain on the premises notwithstanding, he did so at his own risk. [Vogt v. Wurmb, 300 S. W. 278, and authorities cited.] With these propositions in mind let us recur to the facts as they appear from plaintiff's testimony.

The dynamite, caps and fuses were in an open box just inside the door of the blacksmith shop. These were not only plainly observable from the inside, but could be easily seen by one standing on the outside of the building facing the door. Plaintiff had observed them with sufficient attention to be able to say that "there were about 30 sticks . . . a double row of dynamite, one on top of the other, about eighteen or twenty inches long." On the morning of the explosion, and prior to the occurrence, he was at or in the blacksmith shop twice. He saw the "blaster working in this mine" "load some cartridges there that morning." Subsequently he saw the blacksmith heat and then cut off the point of a steel rockdrill, and he saw a piece of hot metal strike the wall just over the box of dynamite, four or five feet above it—"hit the wall and fall." Thereafter the blacksmith left the shop, but plaintiff remained there—alone. After an interval of twenty minutes the blacksmith returned for a bolt. While he was hunting for one, plaintiff happened to look down at the dynamite box. He saw smoke in it; the explosion occurred immediately thereafter. From the foregoing it indubitably appears: that plaintiff not only knew that there was an open box of dynamite in the blacksmith shop, but that a hot piece of steel had struck the wall just above it and fallen; and that after acquiring such knowledge he had ample time in which to have left the premises in safety before the explosion occurred. In this connection it must be remembered that plaintiff was an experienced clay miner, and consequently knew just as fully as either defendant or Janssen the dangers, if any, attendant upon the situation which confronted him. The risk of injury incident to that situation was, therefore, one which he voluntarily assumed.

It follows that the judgment of the circuit court should be reversed. It is so ordered. All concur.