EDWARD M. PAUBEL v. EARL HITZ, Doing Business as EMIL HITZ COMMISSION COMPANY, Appellant.—96 S. W. (2d) 369.

Division Two, August 20, 1936.

*Jones, Hocker, Gladney & Jones, Web A. Welker* and *Arnot L. Sheppard* for appellant.

*Berthold & Chase* and *Don O. Russell* for respondent.

BOHLING, C.—Defendant appeals from a judgment for $22,500 awarded plaintiff for injuries sustained by a fall.

Defendant, Earl Hitz, was engaged in the commission business under the name of Emil Hitz Commission Company, handling live turkeys, geese, chickens, ducks, eggs, veal, hides and once in a while a few lambs, within what was known as "Commission Row district," St. Louis, Missouri. The only means of ingress and egress from the sidewalk to defendant's place of business was a permanent runway, about five feet wide, fifty-eight inches long and nine and one-half inches higher at the doorway (with which it was flush) than at the sidewalk line. Defendant used this runway to hand truck the poultry and other farm products purchased and sold into and out of his place of business whenever he needed to truck the same; and "manure and chicken dirt" and other substances would drop onto the runway. This required the cleaning of the runway quite frequently during the daytime, and the use of sawdust or ashes to make it easy to walk on and keep from slipping. At times it was necessary to use a scraper in cleaning the runway.

Plaintiff, Edward M. Paubel, testified that he was forty-eight years of age, earning $175 a month as a United States postman at the time of the accident, and had covered "Commission Row district" since August, 1916 or 1917; that he was familiar with all the entrances along and on both sides of the street; that practically all of the commission companies had the same kind of a runway as defendant and used it for the same purpose as defendant; that he had been delivering mail in the block where defendant's place of business was located for about a year prior to the accident and was making five trips a day to defendant's address; that there was always something on defendant's runway; that on the Saturday before the accident defendant's runway was "wet, slushy, full of dirt, chicken dirt;" that the accident occurred about seven fifty A. M. on his first trip on Monday, February 3, 1930; that he was wearing a pair of Dr. Sawyer's high shoes, practically new, with rubber heels with a slip knot; that there was some snow and slush (wet and slushy) on the ground, which was tracked in and out of defendant's place on the runway; that it would melt during the day and freeze up at night; that it had not rained that day; that he noticed the condition of the runway when he went in and when he went out; that he had the

mail pouch over his left shoulder, a bundle of papers in his left arm. and a bundle of loose letters in his left hand; that he walked up the runway to deliver the mail—''I took great care in doing so, as I saw that it was slippery and wet and full of manure and chicken dirt.. After I had delivered the mail I started out of the door. My first step, my both feet slipped from under me''—; and that there was: slush, chicken dirt, manure and other substances on the runway at the time he fell.

Defendant contends his demurrer to the evidence should have been sustained; as the evidence discloses plaintiff had full notice and knowledge of the condition of the runway, in no way inferior to defendant's knowledge of its condition, and, as superior knowledge on the part of the possessor is essential to create liability to an invitee, plaintiff may not recover.

The old common law conception of a landlord's sovereignty and immunity for acts done within the boundaries of his land has been gradually encroached upon by the principles of the modern law of negligence; but in the application of tort principles to cases involving injuries suffered by parties on account of the condition of the premises of others, the courts have not gone to the extent of making it undesirable to possess land or obliterating the distinctions between private and public property or property devoted to a public use.

The status of plaintiff on defendant's premises was that of a business invitee, visitor or guest. The cases of Gordon v. Cummings, 152 Mass. 513, 515, and Sutton v. Penn, 238 Ill. App. 182, 185, hold a United States postman, engaged in the performance of his duties, enters the premises of those he serves upon the express or implied invitation so to do. [See also 45 C. J. 817, sec. 226, n. 2, as to government employees on premises of others in the performance of their duties.] Plaintiff's presence was not solely for plaintiff's benefit but for the mutual benefit of defendant (to and from whom plaintiff delivered and received mail) and plaintiff.

In Vogt v. Wurmb, 318 Mo. 471, 475, 300 S. W. 278, 279, plaintiff, a business invitee entered defendant's retail store via concrete steps, recently painted, with a board on each step to protect the paint. The steps looked safe to plaintiff. On leaving the store one of the boards went out from under plaintiff causing her to fall and become injured   In ruling defendant possessor's demurrer was properly sustained the court considered the condition of the steps not inherently dangerous; that whatever danger existed was obvious; that there was no lurking peril, or any hidden or concealed physical situation: and that all the information the possessors had concerning the condition of the steps and the care required to use them with safety had been disclosed to plaintiff. The court (citing cases) recognized the rule announced in Carleton v. Franconia I. & S. Co., 99 Mass. 216, 217, and stated in Bennett v. Louisville & N. Railroad Co., 102 U. S. 577,

580, 26 L. Ed. 235, 236 as follows: ". . . the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation;" and quoted 20, Ruling Case Law, 56, section 52, in part, as follows: ". . . The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." The text to 20 Ruling Case Law, section 52, is supported by abundant authority; and has become well settled in Missouri.

This court en banc in Cash v. Sonken-Galamba Co., 322 Mo. 349, 355, 356, 17 S. W. (2d) 927, 929 (6, 7), applying the Vogt case, supra, said: "The rule announced in the Vogt case may, with propriety, be applied in the instant case, and there being no presumption of negligence on the part of the appellant merely upon the showing that an injury has been sustained to the respondent who was rightfully on the premises, then the true measure of the appellant's liability is its superior knowledge of the perilous condition and the danger therefrom to the respondent when going upon the property. Therefore, the superior knowledge being the test, then what the respondent saw disclosed to him all the information that the appellant or its employees could have possessed. This being true the conclusion is not only reasonable but inevitable, that the respondent was guilty of contributory negligence." [See also Burnison v. Sanders, 225 Mo. App. 1159, 1163, 35 S W. (2d) 619, 622 (2, 3).]

In Mullen v. Sensenbrenner Merc. Co. (Mo ) 260 S. W. 982, 984 (4, 5), 33 A. L. R. 176. a business invitee, upon leaving defendant's place of business slipped on the inclined tile entrance, which she charged was unusually slick, at a dangerous slope, had a crack in it. and that defendant had failed to roughen. or spread sawdust or mats over it to prevent slipping. In holding defendant's demurrer to the evidence should have been sustained, the court, in part. said: "Defendant knew of no condition or danger connected with said entrance, not known or visible to plaintiff."

In Main v. Lehman, 294 Mo. 579, 589, 243 S. W. 91, 93 (2). where plaintiff upon leaving a toilet fell over a six inch step, which plaintiff had observed upon entering some time previous, the court said: "Sup-

pose at the time defendant's employee . . . had informed her of the step in the toilet which she would have to ascend and descend, would not the defendant have performed his whole duty under the law? We think so. When plaintiff reached the toilet with the open door she admits she saw with her own eyes the step in the toilet and which she knew she would have to ascend and descend. Defendant thus gave plaintiff, and plaintiff had, ample notice of the step and its location and the whole situation just a moment before the injury.''

In Goetz v. Hydraulic Press Brick Co., 320 Mo. 586, 593, 9 S. W. (2d) 606, 608(4), 60 A. L. R. 1064, 1069, plaintiff-invitee saw a blacksmith cut off the point of a heated rock drill, and a piece of the hot metal hit the wall just over a box containing dynamite and fell, and after an interval of time, saw smoke coming from the dynamite box. Plaintiff, although having ample time to leave and knowing of the danger, was injured by the resultant explosion. In reversing the judgment for plaintiff the court, on motion for rehearing, said: ''. . . the conclusion was reached that the defendant did not violate any duty it was under to plaintiff; that, so far as plaintiff was concerned, it was guilty of no actionable negligence. The case was not therefore ruled upon any question of contributory negligence, or assumption of risk, as the respondent seems to think.''

In Stein v. Battenfield O. & G. Co., 327 Mo. 804, 816(III), 39 S. W. (2d) 345, 351(12), deceased had been engaged in repairing and replacing certain electrical apparatus in the respondent's manufacturing plant when he became entangled in a belt, with resultant. fatal injury. Deceased was an expert electrician, in business for himself, and had been doing defendant's electrical work for some time, with no control in defendant over the work except as to the result, and at the time of his injuries had assumed a position astride a rapidly moving belt which, according to some of the evidence, was unguarded. Held: Deceased was an independent contractor, an invitee, and the relation of master and servant did not exist; and defendant, while liable for injury occasioned by unsafe conditions of the premises known to defendant but unknown to deceased, was not liable for injuries resulting from conditions obviously dangerous and known by the deceased to be so; as to which dangers deceased was guilty of contributory negligence, or, more accurately, assumed the risk.

The facts of the instant case are distinguishable from the cases cited and relied on by plaintiff to make the issue one for the jury by reason of the fact that in said cases the plaintiff was ignorant of the existence of a condition, of which plaintiff was not charged with notice, occasioning the injuries [Hollis v. Kansas City, Mo., Retail Mer. Assn., 205 Mo. 508, 516, 103 S. W. 32, 34; Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 413, 114 S. W. 1057, 1062 (stat-

ing: "If the plaintiff saw the gates open, he was guilty of negligence in not taking care to avoid coming into collision with them; . . ." recognizing the applicable rule of law in the instant case); Geninazza v. R. U. Leonori A. & S. Co. (Mo. en banc), 252 S. W. 417, 419 (stating: "If, when she [plaintiff] reached the platform, the danger of falling was visible and obvious, her failure to discover and avoid it would amount to contributory negligence"); Oakley v. Richards, 275 Mo. 266, 204 S. W. 505; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488 (the last two involving injuries in a theater); Glaser v. Rothschild, 221 Mo. 180, 217, 120 S. W. 1, 13; Kennedy v. Phillips, 319 Mo. 573, 588(d), 5 S. W. (2d) 33, 39(6)].

Brewer v. Silverstein (Mo.), 64 S. W. (2d) 289, 290(2, 3); Roman v. King, 289 Mo. 641, 233 S. W. 161 (cited by plaintiff), and other like cases, involved the rights of a tenant against his landlord. In each of said cases the tenant was injured by reason of a defect existing in a portion (steps) of the premises used by (but not demised to) the tenant in common with other tenants of the premises and over which the landlord retained possession and control, imposing upon the landlord the duty to exercise due care to maintain and repair such portions of the premises in a reasonably safe condition; failure in such respect constituting negligence [Gray v. Pearline, 328 Mo. 1192, 1198, 43 S. W. (2d) 802, 804(2)]. Roman v. King, 289 Mo. l. c. 654, 233 S. W. l. c. 164(2), states: "Her [tenant's] rights under the lease constituted the measure of his [landlord's] duty in that respect." The tenant's right of user and enjoyment of possession, including the exercise of due care on the part of the landlord to maintain a common passage in a reasonably safe condition, rests in part on the contract (expressed or implied) of letting, supported by the consideration of rental paid.

Plaintiff also contends for the application of the law of master and servant cases; that is, plaintiff was not guilty of contributory negligence as a matter of law unless the danger was so obvious and glaring that no reasonably prudent person in the exercise of due care would have proceeded as plaintiff proceeded. No contractual relation existed between plaintiff (a postman) and defendant nor between plaintiff's employer and defendant; and we are at a loss to find any legal status upon which to sustain the contention. Plaintiff was a business invitee, visitor or guest—not the servant of defendant or the servant of any one with whom defendant had any contractual relationship. In Clark v. Union Iron & Foundry Co., 234 Mo. 436, 137 S. W. 577, and Clark v. St. Louis & S. Ry. Co., 234 Mo. 396, 137 S. W. 583, plaintiff, an employee of defendant Iron & Foundry Company, was injured by electric current escaping from heavily charged wires of defendant Railway Company. To the eye *the wires*

*appeared fully insulated,* but there was evidence defendant Railway Company knew they were uninsulated (being covered merely with a weatherproofing substance) and dangerous *and did not notify plaintiff or his employer* of the danger [234 Mo. 1. c. 406, 418, 137 S. W. 1. c. 585, 589]. High voltage electric current, being a dangerous instrumentality, imposed upon defendant Railway Company the utmost (highest degree of) care in the maintenance of its electric wires in a safe condition. Defendant Iron & Foundry Company and its employee were not on an equal footing regarding the legal duty of inquiry and inspection for secret or hidden dangers—a duty resting on the master; and said master's ordering plaintiff to ascend the pole and proceed with the work was an assurance the place was reasonably safe. In Jewell v. Kansas City B. & N. Co., 231 Mo. 176, 193, 132 S. W. 703, 707, the court expressly states the evidence not only tended to establish plaintiff was an employee of an independent contractor but also that the independent contractor was a vice principal of defendant. On this conflict of the evidence we think statements *arguendo* in ruling the demurrer (plaintiff being entitled to have the evidence considered in its most favorable light) not controlling. In the instant case defendant exercised no control over plaintiff, a United States postman, in any such sense as would make plaintiff defendant's employee.

Cases involving injuries arising from defective conditions of sidewalks or other public thoroughfares are distinguishable from those involving injuries arising from defective conditions on private property in that there exists in the general public a right of passage over the sidewalks free from unreasonable interference by the abutting property owners; whereas such a right of user is inconsistent with the right of ownership of private property; and cases like Stith v. Newberry Co., 336 Mo. 467, 481(3), 79 S. W. (2d) 447, 453(4) (recognizing the duty of pedestrians to keep a general lookout to observe obstructions or dangers and to use their senses), although, in some instances, of possible value by way of analogy, do not rule the issues here presented.

The factors above indicated, as well as others not specifically mentioned, sufficiently differentiate the cases relied on by plaintiff from the instant case.

From the cases it appears that the reciprocal legal duties and rights of the possessor of land and one thereon are affected, among other factors, by the legal relationship existing between the parties (such as where the party on the premises is a trespasser, a distinction existing between adults and young children in some instances, a licensee, whether by invitation or permission, a business invitee, visitor or guest for mutual benefit or the possessor's benefit, a person privileged

to enter thereon for a public or private purpose) ; and by the nature of the business conducted on (whether of a public or private nature) or dangers attendant upon the use made of (whether reasonably safe or inherently dangerous) the premises; and by the object and purpose of the person's presence on the premises; and whether the duties imposed on the possessor arise under the common law, or are supported by contractual relations, or statutory or ordinance provisions. In the different cases these factors have been given consideration as the facts called for the application of one or the other of the several rules of law. Generally speaking, the legal duties imposed on the possessor increase or decrease with the beneficial interest of the possessor in the presence of the other on the premises; and, as a corollary, corresponding shifts occur in the legal rights of the party on the premises.

In the instant case we are not concerned with the issues involving a common carrier or public utility, or a public passageway, or inherently dangerous instrumentalities or issues affected by contract, ordinance or statutory provisions. Defendant as a possessor of real estate, engaged in a business unaffected by public user and open to those who come upon his private business, could refuse, without discontinuing his business or excluding all customers or patrons, to receive any person, including plaintiff, on his property, with or without reason. He possessed the right to conduct his commission business in a manner conforming to his business convenience and subject to the usual and customary incidents attending said business, provided he exercised due care in maintaining the premises in a reasonably safe condition or in giving due notice of any unsafe condition, consideration being given to the nature of said business, to (in the instant case) a business invitee thereon. According to plaintiff's testimony the maintenance and use of the runway at defendant's place of business was common to the commission houses in that vicinity. No hidden, lurking or secret peril is involved. Whatever danger existed was not only obvious but actually known and appreciated by plaintiff. He possessed all the information concerning the physical condition of the runway possessed by defendant or his employees and knew of and appreciated the care required to use the runway. Had he been warned of the slippery condition of the runway, no greater information would have been imparted to him than that which he admittedly possessed. A warning imparting notice of the condition of the runway would have discharged defendant's legal obligation. Therefore, whatever risk existed incident to passage over the runway was voluntarily incurred by plaintiff—*volenti non fit injuria*—and defendant breached no legal obligation owed plaintiff.

The facts in the instant case are more favorable to a defendant than in the Vogt and Mullen cases, supra; and under the decisions of

this court the judgment should be and is reversed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.