C. B. GOWING, Appellee, v. HENRY FIELD COMPANY, Appellant.

No. 44323.

730

SEPTEMBER 20, 1938.

REHEARING DENIED JANUARY 20, 1939.

Kimball, Peterson, Smith & Peterson, Keenan, Clovis & Sar, and Miller, Miller & Miller, for appellant.

Ferguson & Ferguson, for appellee.

HAMILTON, J.—It is conceded by the parties to this cause of action that the plaintiff was an independent contractor and the case was submitted to the jury on this theory. This being true, it is not necessary to spend any time in a discussion of this question. Plaintiff was a master plumber and had been such for 18 or 20 years. He was engaged in business for himself; he had his own shop, tools and appliances. The defendant has for many years been engaged in the seed and nursery business in Shenandoah, Iowa. The plaintiff had for a number of years done work for the defendant and, on October 10, 1934, an agent of the defendant called plaintiff over the telephone engaging plaintiff to come to the defendant's place of business and install steam pipes in the gutters and down spouting on one of the buildings of the defendant company. The plaintiff was told that the defendant company had been experiencing difficulty in the winter months with ice forming in the gutters and it wanted a steam pipe attached to one of the radiators in the main building and extended outside into the gutters and spouting so that ice would not form and stop or clog up the gutters. This was the result which defendant wished to have accomplished. The method and manner of doing the work was up to the contractor. Nothing was said about the defendant furnishing any of the tools or appliances necessary to install the piping. Plaintiff was told to see Burl Snodgrass who would show him where the pipe was to be installed. Plaintiff brought with him his own tools and his regular helper and the company furnished two additional helpers, one of them being Burl Snodgrass. The main building was four stories in height. Adjacent to and on the south side of the main building was a two-story arcade erected over a driveway; this

arcade was about 25 feet in width and had a flat roof around the outer edge of which was a balustrade 10 or 12 inches in width and extending up above the flat roof about 14 or 16 inches. South of the arcade was a one-story porch with a flat roof. Extending from the outer edge of the porch to within about 16 inches of the top of the outer wall of the arcade was an iron fire escape built as the ordinary fire escape except that there was no railing on either side of the same, simply the ladder or stairway portion of the ordinary fire escape. The treads or steps were eight inches wide constructed of five ½-inch square steel bars set two inches apart with the edge or angle up. These bars were securely riveted into steel plates at each end and these plates were fastened by 3-8 or ½-inch bolts to the risers or steel uprights of the ladder or stair. The width of the porch roof is not given nor the degree of incline, but there is in evidence a photograph which indicates the fire escape ladder was set at a rather steep incline. The gutters to be fitted with steam piping were those around the arcade roof. The plaintiff and his helper came to work on October 11, 1934. They saw Snodgrass and together the workmen proceeded to the third floor of the main building. This building is equipped with an elevator and there is also an inside stairway. They spent the forenoon inside making the connections with the radiation of the heating plant and preparing the means of extending the pipe out through the wall of the main building onto the roof of the arcade. The steam piping to be used was placed out on the roof of the arcade. In the afternoon they came back to work going through the main building by means of the elevator or inside stairway; from thence they went out through a window which had been made into a door onto the roof of the arcade. There was also a door in the south side of the second story of the arcade opening out onto the porch roof. It was discovered that the steam piping was bent and plaintiff said, "We will take them down onto the cement driveway and straighten them." The steam piping was in sections about 20 feet long and Snodgrass said, "We will use the fire escape and avoid taking the long piping down through the main building." This was acquiesced in by plaintiff. They slid the piping down along the side of the fire escape to the porch roof and from thence to the ground, the men descending on the fire escape to the roof of the porch and from there by means of a ladder to the ground. In going down this fire escape, plaintiff

stepped over the balustrade onto the first tread or step of the fire escape, then turned around facing the ladder using his hands to hold on and he and his three helpers descended to the ground, straightened the pipes and took them back in the same manner to the roof of the arcade where they were installed in the gutter. Thus, the four men went down and up this fire escape experiencing no difficulty and although they were facing the fire escape none of them noticed anything wrong with any of the treads or bars in the treads of the fire escape ladder. After the pipes were installed in the gutter,. it was necessary to go down onto the porch roof to make a connection in the down spout. Plaintiff, without any direction or instruction from anyone, took two pipe wrenches in his left hand and a five-foot piece of steam pipe in right hand and undertook to again go down the fire escape. He stepped up with his left foot from the roof of the arcade over the 16 inch balustrade down about the same distance to the first step or tread of the ladder and as he attempted to bring his right foot over the wall he lost his balance and fell to the porch roof below. In describing the accident, plaintiff said, "I came down to the fire wall and stepped over, first with my left foot over this fire wall (or balustrade) * * * when I put that one foot over I put my pipe wrenches, the hand with the wrenches in it, against the wall and started to get over with the other foot." He never got his right foot clear over. He was then asked what happened. He said, "*Something* give, moved or *something* and over balanced me. I just fell." The witness was later recalled and was asked to describe what sensation he had, if any, with his foot and, over objection of opposing counsel that the testimony was incompetent and an attempt to have the witness vary or change his testimony, said, "I came up with my right foot. I felt something move, or a little depression. * * * Seemed to go down. As I fell I could feel *my heel slip,* that is all, *just a little slip.* Q. You refer to a depression. What do you mean by that? A. I don't know how to explain it. Q. You say there was a depression?. A. Well, *just my heel seemed to go down as near as I can tell.* Q. Down in what? A. In the top tread or step." (Italics supplied.) This constitutes the entire testimony bearing on the question as to how the accident happened. The other three men were on the roof at the time but were not looking and did not see what took place until they saw the plaintiff in the act of falling.

The gist of plaintiff's claim for damages is found in the allegations of his petition which charges negligence on the part of the defendant in the following manner:

"That the iron fire escape offered by the defendant to this plaintiff for use, was out of repair, infirm and insecure, in that the top step or tread was uneven, loose and rough, and slanted down in front. That the defendant did not warn or notify this plaintiff of said defective condition and knew of its defective condition prior to the time of the accident, or in the exercise of reasonable care should have known of such defects, and permitted it to exist in said condition knowing the same was likely to be used by workmen upon the premises."

This was the only ground of negligence submitted to the jury. In answer to the charge of negligence, the defendant alleged the plaintiff was an independent contractor and the defendant did not owe him the duty of furnishing him a safe place to work; that plaintiff failed to exercise reasonable care in attempting to make use of the fire escape; that if same were in any way defective such defect was readily apparent in the exercise of ordinary care and, therefore, the plaintiff assumed any risk incident thereto and if the defect was not readily apparent the same was not known to the defendant. On this appeal, it is the contention of defendant that plaintiff failed to make out a case for the jury, and that its motion to direct a verdict should have been sustained and that in overruling said motion made at the close of plaintiff's evidence and at the close of all the evidence the trial court committed an error. More specifically it is claimed that (a) there was no competent testimony of actual knowledge of the claimed defect or that such condition had existed for a sufficient length of time to constitute constructive notice, (b) that there was no causal connection, there being nothing but conjecture that the alleged defect in the top step caused plaintiff to fall or was the proximate cause of plaintiff's injury, (c) the defendant was not an insurer of plaintiff's safety, and was not required to furnish plaintiff as an independent contractor a safe place to work, and (d) there was a failure to prove freedom from contributory negligence. That the plaintiff fell and sustained a serious injury is not disputed. The case was submitted to a jury which returned a verdict for the plaintiff in a substantial sum.

■ Counsel for appellee have gone to great pains and expended a great deal of labor and effort to sustain this verdict. In view of these facts, we have given this case our very careful study and consideration well realizing that ordinarily the question of proximate cause, as well as contributory negligence, are matters for the jury and it is only where the facts are such that all reasonable men must draw the same conclusion from them that these questions become questions of law for the court.

■ In passing on defendant's motion to direct a verdict, the plaintiff is entitled to have the evidence considered in the light most favorable to him. Willers et al. v. Flanley Grain Co., 224 Iowa 409, 275 N. W. 474.

"Every inference reasonably permissible in support of the issue should be carried to the aid of the evidence." McWilliams v. Beck, 220 Iowa 906, 909, 262 N. W. 781, 782. Having in mind these rules, we still find that defendant's motion should have been sustained.

■ The only duty owing by the defendant to the plaintiff as an independent contractor was that of exercising reasonable care to promote his safety. Plaintiff was an invitee and it was defendant's duty to warn him of any danger in and about the premises which he knew of or in the exercise of ordinary care ought to have known of and of which plaintiff was not aware or which in the exercise of ordinary care on his part would not have been discovered. Steele v. Grahl-Peterson Co., 135 Iowa, 418, 109 N. W. 882.

Defendant was not responsible to plaintiff as an independent contractor for injuries from defects or dangers which the contractor knew of or ought to have known of "but if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury." Douglas v. Peck & L. Co., 89 Conn. 622, 95 Atl. 22, 25; 44 A. L. R. 894, note; Arizona Binghampton Copper Co. v. Dickson, Adm. etc., 22 Arizona 163, 195 Pac. 538, 44 A. L. R. 881.

Much of appellee's argument is based on the assumption that Snodgrass had some control over the manner and method of doing this work and, when he said something about using the fire escape, plaintiff was obliged to follow his direction. This is

a false premise. The only instructions Snodgrass had from anyone in authority was to show plaintiff "where" the pipe was to be installed. Furthermore, at the time plaintiff attempted to go down the fire escape the second time he was under orders from no one. He was his own boss. The piece of pipe he had in one hand was only five feet long and he could have taken it down the elevator and then up the ladder resting on the ground. He could have brought his own ladders. He was under no obligation to use this fire escape. Neither was defendant under any duty to furnish him with tools or appliances with which to do his work. The statement in the petition "that the iron fire escape was 'offered' by the defendant to this plaintiff for use" is not borne out by any testimony. Furthermore, the danger did not inhere in the condition of the fire escape, but the manner of its use. Counsel for appellee, in argument, compares this fire escape to the steps leading up to the entrance to the State House. The comparison is unreasonable. The entrance to the State House is open to the use of the public and hundreds of persons use it daily; whereas, this fire escape is in no sense a thoroughfare. From the ground, one had to climb a ladder to get to it. It was intended for what its name implies. Considered in connection with the necessities or exigencies of this occasion, it is more reasonably compared to a ladder by means of which the workmen could descend or ascend in going to and from the roof of the arcade to the roof of the porch. Considered as a ladder, it was indeed a very solid and substantial one and, when used as a ladder is ordinarily used, it must, we think, be said as a matter of law that it was perfectly safe. When used by the men as a ladder going up and down facing it, at the same time making use of their hands, none of them experienced any difficulty. It was only when the plaintiff undertook to step over this balustrade wall 12 inches wide and 16 inches high with his hands so occupied that he was powerless to help himself that he had any trouble. Can it be said with any reason or logic that the defendant should answer for this? Can the minds of reasonable men differ as to this?

In the case of Dreier v. McDermott, 157 Iowa 726, 141 N. W. 315, 50 L. R. A. (N. S.) 566, this court said [page 737 of 157 Iowa, page 315 of 141 N. W.] :

"It has been repeatedly held that where one knowingly

places himself in a place of danger which he might easily have avoided he assumes all the risk incident thereto.''

In the case of Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S. W. 2d 345, 351, the Supreme Court of Missouri, in passing upon a similar question where the claimant was injured by falling into a rapidly moving belt, said:

''The deceased, in going to the respondent's plant as an independent contractor to do work was an invitee. The respondent would be liable for injury to him occasioned by any unsafe condition of the premises encountered in the work, which was known to it but unknown to him; but was not liable for injuries resulting from conditions obviously dangerous and known by the deceased to be so. As to these, he was guilty of contributory negligence, or, more accurately, assumed the risk. He knew the belt was unguarded, he knew the motor was running 'at great speed and with terrific force,' as the petition says, and yet he took a position 3 feet above the floor with one foot upon the rounded flange of the motor and the other on a crosspiece against the wall about 3 feet away, with his legs astride the rapidly moving belt and his body twisted, while he worked. He was not a servant ordered by the respondent to go where he did; he was an expert following his own devices. He knew the conditions he would have to cope with. Under the authorities the respondent cannot be charged with liability for the unfortunate result. Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Goetz v. Hydraulic Press Brick Co., 320 Mo. 586, 9 S. W. 2d 606, 60 A. L. R. 1064; Cash v. Sonken-Calamba Co., 322 Mo. 349, 17 S. W. 2d 927.''

■ When plaintiff, with his hands full standing on the roof of this two-story building facing out into space, undertook the acrobatic feat of either walking down this steep incline as he would an ordinary stairway or of balancing himself on one heel and swinging his body around as he brought his other leg over the balustrade to face the ladder without the aid or assistance of his hands, he created his own danger. He assumed the hazard or risk such conduct entailed and must be held as a matter of law to have contributed in some degree to his own injury. Any other rule would make of defendant an insurer.

■ This is sufficient to dispose of the case. There is still an-

738

other ground of the motion that we think was good. There was no causal connection between the alleged defect in the top tread and the injury. If we turn back to plaintiff's testimony set out above and give attention to the italicized portion, it must be said that there was nothing but conjecture upon which the jury could arrive at the conclusion that the defect caused plaintiff to lose his balance and fall. A few minutes after the accident, Fred Gowing, a nephew of the plaintiff and who was at the time general repair and maintenance man for the defendent, asked plaintiff how it happened and plaintiff said that "he caught his heel on one of the steps." Not a word was said by any of the men at the time of this unfortunate accident about any defective condition in the fire escape.

As to the actual condition of this top step, the evidence of the plaintiff is in hopeless conflict. The evidence of Fred Gowing, who examined the fire escape two days after the accident, impeaches the testimony of Herold, who examined it a few hours after the accident, and Brooks, who examined it a few days later. The last two named witnesses testified that the middle bar of the top tread was bent down from 1½ to 2 inches below the rest while Fred Gowing testified that he examined it and the bars were even and none of the bars in the top tread were bent and also said that it was in the same condition at the time Brooks examined it that it was at the time of the accident. There was no evidence that the bar was bent before the accident. As to whether it was bent, as well as to the extent it was bent, after the accident was, of course, for the jury. There was expert testimony to the effect that it would be physically impossible for one of these bars, fastened solidly as it was in the steel plates which were in turn bolted to the side arms, to be bent down as much as Brooks and Herold said it was without pulling it out of the plate. Some allowance must, of course, be made for inaccuracy as to the exact condition because of the fact that the trial took place more than two years after the accident. It must be said to the credit of the plaintiff that he at no time claimed to know just what caused him to fall. He said, "*Something give, moved, or something.*" When recalled and pressed by leading questions to make his answers more specific, he said that he could not explain it but as near as he could tell his heel seemed to go down in the top step. There is no evidence that defendant had knowledge of the defect. When this bar was bent, whether the condition had

existed for a sufficient length of time to amount to constructive notice, whether the bent bar was the thing that caused plaintiff to lose his balance and fall, or whether his heel caught on the narrow edge of any one of the bars and slid down into the space between or into this depression where the middle bar was bent is all mere conjecture and speculation. Verdicts must rest on something more substantial. In a recent case, Westenburg v. Johnson, 221 Iowa 134, at page 141, 264 N. W. 18, at page 22, we said:

" * * * the cause of the accident must be clearly shown and cannot be left to speculation or conjecture."

 For the reasons indicated, the case must be reversed and, under the record here, we think it should be remanded with instructions to enter an order sustaining defendant's motion to direct a verdict with costs, and it is so ordered.—Reversed and remanded with instructions.

SAGER, C. J., and STIGER, DONEGAN, and ANDERSON, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J., (dissenting.)—I concur in the opinion except that part which orders the trial court to direct a verdict in favor of the defendant. This is a court for the correction of errors. The case at bar is a law action, and, inasmuch as upon the retrial the evidence may be entirely different, this court should not pass final judgment until the new record is perfected.

I am authorized to say that Mr. Justice Richards joins in this dissent.