MacDONALD ENGINEERING COM-
PANY, Appellant,

v.

Robert D. HOVER, Appellee.

No. 16498.

United States Court of Appeals
Eighth Circuit.

May 19, 1961.

Rehearing Denied June 21, 1961.

Paul .W. Steward, Des Moines, Iowa, A. B. Crouch, Des Moines, Iowa, and David R. Hardy, Kansas City, Mo., on the brief, for appellants.

James G. McDowell, Jr., Des Moines, Iowa, for appellee.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant MacDonald Engineering Company (hereinafter MacDonald or defendant) appeals from final judgment for $75,000 based upon jury verdict entered against it in an action for personal injuries brought by plaintiff Hover. Jurisdiction based upon diversity of citizenship and the requisite amount is established.

Plaintiff is an electrician employed by Dewey Electric Company (Dewey). Pursuant to Dewey's orders, plaintiff was during the fall of 1956 engaged in doing electrical work on a series of silos defendant was constructing under contract for Northwestern States Portland Cement Company (Northwestern) at its Mason City, Iowa, plant. As the weath-er grew colder, plaintiff used a salamander, a smudge pot type of heating device, to keep him warm while working. On November 28, 1956, the salamander plaintiff had been using was missing. The weather that day reached a maximum temperature of 35°. After working for a time, plaintiff and his helper conducted a search for a salamander, locating a lighted salamander in a nearby silo which was part of the same construction project. After inspecting the salamander and noting that a missing handle had been replaced by a wire loop and after testing said wire loop, plaintiff and his helper started to move the salamander to his worksite. The bottom of the handle on the salamander is designed to be equipped with a safety clamp which subsequent investigation showed to be missing. Plaintiff testified that he did not know of this safety clamp construction or of the fact that the lower part of the device separated from the upper part. Because of the absence of a safety clamp, the bottom of the salamander separated from the top causing burning oil to spill upon and seriously burn and injure the plaintiff. The evidence clearly supports a finding that the defect in the salamander was the proximate cause of plaintiff's injuries.

Defendant, at the close of plaintiff's evidence and at the close of all the evidence, moved for a directed verdict upon the grounds that plaintiff had failed to prove freedom from contributory negligence,[1] and that no negligence was proven which could be chargeable to the defendant.

After verdict, defendant filed timely motion for judgment n. o. v. on the same grounds. All of said motions were overruled. Memorandum opinion setting out the court's reasons for overruling the motion for judgment n. o. v. is reported in 183 F.Supp. 427.

Defendant urges upon this appeal that the court erred in overruling its motions for directed verdict and judgment n. o. v. for the following reasons:

1. The freedom from contributory negligence issue is not argued upon this appeal.

(A) Plaintiff wholly failed to prove that the defendant ever owned, possessed, controlled or had any connection whatever with the salamander involved in the accident.

(B) Plaintiff was no more than a mere licensee, to whom defendant owed no duty as to the condition of the salamander.

(C) There is no breach of duty where danger is obvious.

We shall dispose of the directed verdict issue before considering other errors asserted by the defendant.

■ ■ In reviewing a ruling upon a motion for directed verdict or motion for judgment n. o. v. upon the ground of the lack of substantial evidence to support a verdict, it is well established that the party against whom the motion is directed is entitled to have the evidence viewed in the light most favorable to him and that he is entitled to the benefit of every inference that may be reasonably drawn from the evidence. Where, as here, the motion is made by a defendant, the motion cannot be sustained "unless it is determined that there was no reasonable basis upon which findings of negligence and defendant's ultimate liability for plaintiff's injuries could be based." Clinton Foods, Inc. v. Youngs, 8 Cir., 266 F. 2d 116, 117–118. See Gowing v. Henry Field Co., 225 Iowa 729, 281 N.W. 281, 283.

In Anglen v. Braniff Airways, 8 Cir., 237 F.2d 736, 740, we stated:

"In a jury case, where conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn. * * * It is only where the evidence is all one way, or so overwhelmingly one way as to leave no doubt what the fact is, that a court is justified in taking a case from a jury." See Commissioner v. Duberstein, 363 U.S. 278, 290, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

In Bullock v. Safeway Stores, 8 Cir., 236 F.2d 29, 31, in holding a fact question was presented on plaintiff's status as an invitee, we said:

"It is the general rule that, if the evidence in a particular situation, either on its direct elements or in its reasonable implications, contains room for fair legal doubt as to whether the status of an injured plaintiff is that of a licensee or an invitee, the question is one of fact for the jury. See 65 C.J.S., Negligence, § 272."

Defendant's right to a directed verdict must be viewed in the light of the standards just stated.

Before separately considering defendant's contentions, some additional factual background should be set forth which is relevant to the issues raised by this appeal. MacDonald was employed by Northwestern to do engineering and designing work for cement storage silos and a pack house Northwestern was planning to construct as an addition to its existing Mason City, Iowa, plant. Northwestern was desirous of accelerating the commencement of the silo construction. On June 17, 1956, by letter of proposal accepted by Northwestern, MacDonald agreed to construct a series of silos which it had designed, the contract providing in part:

"We now propose to furnish all labor, tools, materials and equipment to construct the silos only, including the structure and foundations, machinery and Fuller-Kinyon pumps and compressors, and transport line from the finish mill to the silos as outlined herein.

"This proposal does not include the construction of the packhouse and baghouse, roads, track work or plumbing.

*     *     *     *     *

"We will construct the building and install the equipment in accordance with the approved plans and specifications."

Thereafter Northwestern awarded a contract for the construction of an ad-

joining pack house for which MacDonald had furnished the plan to Henkel Construction Company (Henkel). Henkel entered into a sub-contract agreement specifically covering only the pack house with Dewey for all electrical work. It is defendant's position that Dewey's sub-contract covered the electrical work on the silos as well as the pack house and that the electrical work on the silos was not a part of defendant's contract obligation with Northwestern.

We now reach the consideration of defendant's points in support of its contention that it is entitled to a directed verdict.

We believe that point (A) asserting that there is no substantial evidence to support a finding that defendant owned, possessed or controlled the salamander involved in the accident is without merit. It is true that defendant has offered evidence that has not been squarely contradicted to the effect that it did not own the salamander. A rather close question is presented whether the presumption arising from defendant's possession of the salamander is sufficient under the evidence to establish ownership. However, defendant would be equally responsible, other elements creating liability being present, if it possessed or controlled the use of the salamander. There is substantial evidence that it did. It is undisputed that a number of salamanders meeting the description of the one causing the injury were obtained by the defendant from Northwestern's warehouse and were used by it to cure the cement it had poured and that the salamanders were filled and serviced at least at times by the defendant. The testimony shows salamanders were designed primarily for curing cement and not for providing heat for workmen, but there is substantial evidence establishing that many workmen, including admitted employees of defendant, were for a considerable period using the salamanders for keeping themselves warm while at work.

■ Plaintiff, for a number of weeks prior to the accident, used a salamander at his work and found the one that caused the injury upon the premises under control of the defendant as primary contractor on the premises. The evidence also shows that Dewey, plaintiff's immediate employer, owned or furnished no salamanders and that Henkel's salamanders were of a different type. We believe there is adequate evidence to support a finding that the defective salamander was in the possession and under control of the defendant at the time of the accident.

■ Point (B) raises the important issue of whether defendant was under any obligation to furnish plaintiff with a safe place to work or to see that the equipment provided was safe. The answer to this question turns upon the relationship between the plaintiff and defendant. If the plaintiff was a trespasser or a bare or mere licensee, defendant under the circumstances here presented would owe him no duty to provide safe equipment. Plaintiff contends that he was an invitee of defendant, or in the alternate, at least a licensee by invitation, express or implied.

The Supreme Court of Iowa, in the recent case of Reasoner v. Chicago, Rock Island and Pacific R. Co., 251 Iowa 506, 101 N.W.2d 739, 741, states, "The nature of the entrance of a person upon the property of another can be divided into four categories. 1. Trespass. 2. Bare licensee. 3. Implied or express licensee. 4. Invitee." Cases supporting such classifications are cited. The court discusses the significance of the various categories and observes that the difference between a trespasser and a bare or mere licensee is slight and that as to such classifications, the owner or occupier is under no duty to make or keep the premises safe. Thus, if in our present case the plaintiff is a trespasser or a bare licensee the plaintiff would not be entitled to recover. The court then states what constitutes a licensee by implied invitation and defines an invitee

and distinguishes between an invitee and licensee by invitation as follows:

> " 'An invitee to a place of business is one who goes there, either at the express or implied invitation of the owner or occupant, on business of mutual interest to both, or in connection with the business of the owners; while a licensee is one who goes on the property of another, either by express invitation, or with implied acquiescence, solely in pursuit or furtherance of business, pleasure, or convenience of the licensee.' "

The court then cites and discusses cases in which a licensee by implication status has been held to exist, which cases largely involve persons entering upon railroad rights-of-way.

In Mann v. Des Moines Ry. Co., 232 Iowa 1049, 7 N.W.2d 45, 54, the court found that the plaintiff was more than a bare licensee and was a licensee by implied invitation, supporting such conclusion by quoting from Loveless v. Town of Wilton, 193 Iowa 1323, 188 N. W. 874, 877, as follows:

> " 'Where the person injured was present at the place in question by the express or implied invitation of the owner or occupant, he is neither a trespasser nor a bare licensee, and as to him the general law of negligence imposes the duty of exercising due care to prevent injury.' "

The court then explains the reason for the licensee by implied invitation classification as follows:

> "We have a reason for designating the appellee as a 'licensee by implied invitation,' rather than as an 'invitee', as he comes clearly within the definition of that term as set out herein and as approved by the court in Connell v. Keokuk Elect. Ry. & P. Co., supra, 131 Iowa 622, 626, 109 N.W. 177. In the earlier and in most of our decisions the three relationships under discussion, as heretofore noted, have been designated as 'trespasser,' 'licensee by invita-

tion express or implied,' and 'bare licensee,' while in some of the later decisions the term 'invitee' has been substituted for the second of the above three terms. In defining the term 'invitee,' particularly with respect to a building or place of business, we have introduced an element of business interest to the inviter, or of mutual interest to both, which this court has never held to have been an essential element in the definition of a 'licensee by invitation' in a case of the kind before us."

In Sulhoff v. Everett, 235 Iowa 396, 16 N.W.2d 737, 739, the court quotes from Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215, 218, in part as follows:

> " 'One who has control of a building has a duty to those who come upon the premises by invitation express or implied. He violates that duty when he negligently allows conditions to exist, the existence of which imperil the safety of those who so come upon his premises.' "

and states:

> "The receiver of an express invitation to come upon the premises is an invitee without any evidence that the visit will directly benefit the invitor."

It would seem that at least in some of its cases the Iowa court has in effect broadened the invitee status to include a person upon the premises by express or implied consent of the owner or occupier, even though the person invited upon the premises is there for his own pleasure or convenience rather than for a business purpose or in the interests of the inviter.

Cases considering liability of a defendant on the basis of license by express or implied consent are discussed in the Reasoner case, supra. It is true, as urged by the defendant, that the doctrine has been applied largely in cases involving entrance upon railroad property. However, the language announcing the licensee by express or implied consent doc-

trine is broad and it is difficult to determine from the Iowa cases the extent to which the court will apply the doctrine.

■■ We have gone into the licensee by express or implied invitation cases to some extent because of the errors asserted to instructions hereinafter considered. For the purpose of the consideration of the motion for directed verdict and for judgment n. o. v., the defendant, to prevail, must establish that there is no substantial evidence to support a recovery upon any theory of liability pleaded. We are satisfied that there is substantial evidence to support a finding that the plaintiff is an invitee of the defendant upon the premises occupied by the defendant as prime contractor for the purpose of construction of silos, and this is true if it be assumed that the plaintiff must establish that his entrance was in connection with the business of the defendant or in the mutual interest of both the plaintiff and the defendant. By the terms of the portion of the letter contract heretofore set out, defendant undertook to "construct the building [silos] and install equipment in accordance with approved plans and specifications" agreeing to furnish all necessary "labor and equipment." Certain items, such as plumbing, were excluded but there is no exclusion of the electrical work. The claim that the wiring was Henkel's responsibility under its contract with Northwestern is weakened by the fact that the Henkel-Northwestern contract is not in evidence and the further fact that the Henkel-Dewey sub-contract relating to electrical work is by its terms confined to the pack house, a project separate and distinct from the silos. The oral testimony that the silo electrical work is the responsibility of Henkel is conflicting and far from conclusive, particularly in view of the written contracts just discussed.

Additionally, there is evidence that the plaintiff repaired defendant's vibrator in the silo on a number of occasions, that he fixed controls on defendant's signaling device, that he repaired a drill, and that he ran temporary wires for defendant's power equipment. Moreover, all the electrical work was closely coordinated with the pouring of the cement as some of the wiring had to be placed in the forms before the cement was poured. All of this evidence tends to support an inference that the plaintiff's work was being directed by the defendant and that it was to the defendant's interest to have the plaintiff perform the work.

■ Passing to point (C), we agree with defendant's statement that there can be no breach of duty owed an invitee or licensee by express or implied consent where the danger is obvious. See Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252, 254, discussed by both parties, and Clinton Foods, Inc. v. Youngs, supra. Thus, the vital factual issue presented is whether the defect in the salamander which caused the injury was obvious. Plaintiff has offered substantial evidence tending to show that the defect was not obvious. His testimony is that he was not aware that the lower section of the salamander detached from the upper part, and that he did not know that the device was held together by a clamp attached to the bottom of the handle. The salamanders were usually filled through an opening on the top. If the jury believed plaintiff's testimony that he was not familiar with the construction features of the device heretofore discussed, a finding that the danger was not obvious would be warranted. We are here considering only the primary negligence of the defendant, not contributory negligence on the part of the plaintiff. The accident was caused by the missing safety clamp, not by any normal hazard in moving a lighted salamander or by the breaking of the substitute wire handle which plaintiff had discovered upon inspection. There is no evidence that plaintiff was warned as to the construction of the salamander or the specific defect which caused the injury. The record here does not compel a determination as a matter of law that the defect was obvious.

The defendant has failed to demonstrate that it is entitled to a directed verdict. The court committed no error in overruling its motions.

■ Defendant asserts that the court erred in giving instructions numbered 11 to 17 inclusive, which instructed the jury upon the question of whether the defendant owned, controlled or possessed the salamander, and whether the defendant furnished the salamander to the plaintiff under an express or implied contract, and whether defendant expressly invited the plaintiff to use the salamander. Defendant likewise complains that the court erred in failing to define the meaning of implied invitation and implied contract. Exceptions were filed to the instructions. There is room for doubt whether the court should have instructed on the ownership of the salamander but if any error was committed in this respect, it was without prejudice as the same result would follow if the defendant possessed or controlled the salamander.

Defendant in its brief states: "The instructions of which we here complain may be abstractly correct but the basis of our objections is that they are without support in the evidence." In view of this statement, we are not warranted in prolonging this opinion by setting out and discussing the instructions in detail. We have carefully considered the errors asserted. The problem of giving instructions is complicated by the Iowa cases creating a classification of licensee by implied or express consent, heretofore discussed. At least some of the Iowa cases give support to the belief that the liability of the owner or occupier of the premises to a licensee by express or implied consent is the same as that owed an invitee.

■ Since this is a diversity case, Iowa law controls. It is the right of the Supreme Court of Iowa to determine questions of Iowa law. The question of the adequacy of instruction is largely a question of local law in diversity cases and the considered opinion of the trial judge as to the applicable local law will be accorded great weight by this court. Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R.2d 1376; Dealer's Transport Co. v. Werner Transp. Co., 8 Cir., 203 F.2d 549, 555; Twin City Hardwood Lumber Co. v. Dreger, 8 Cir., 199 F.2d 197, 200. We have frequently stated that we will not attempt to outpredict or outforecast the trial judge upon doubtful questions of local law. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734.

■ The trial court in its opinion, at pages 431, 433, of 183 F.Supp., in its answer to a similar attack made upon the instructions, adequately demonstrates that no prejudicial error was committed in giving the instructions here under attack.

■ Lastly, defendant urges that the court erred in overruling its motion for new trial upon the ground that the $75,-000 verdict was so excessive as to indicate passion and prejudice on the part of the jury. We have frequently held that the question of excessiveness of the verdict cannot be considered upon appeal. Agnew v. Cox, 8 Cir., 254 F.2d 263; Chicago, Rock Island & Pacific Railroad Co. v. Williams, 8 Cir., 245 F.2d 397; National Alfalfa Dehydrating & Mill. Co. v. Sorensen, 8 Cir., 220 F.2d 858.

Many courts of appeal now review in appropriate cases decisions on motions for new trial, based on inadequacy or excessiveness of verdicts. See Dagnello v. Long Island R. R. Co., 2 Cir., 289 F.2d 797; Moore, Federal Practice, Vol. 6, p. 3834.

In our present case, no occasion arises for us to reconsider our position on the reversibility of excessive verdicts. Our examination of the record relating to the extent of the injuries suffered and damages sustained satisfies us that the district court did not commit error in concluding:

"The verdict is both obviously large and surprising in comparison with the dollar figures of past verdicts in the area, but upon a basis of the evidence in the case from

which the jury could have arrived at the amount, it neither shocks the conscience nor fails to effectuate justice. This Court concludes that the size of the verdict does not indicate passion or prejudice in the deliberations, and therefore rejects defendant's ground for a new trial upon this contention." 183 F.Supp. 431.

The defendant has failed to demonstrate that the trial court committed any prejudicial error in the trial of this case.

The judgment appealed from is affirmed.