**ARROW EQUIPMENT, INC., a Minnesota Corporation, Appellant,**

v.

**M–R–S MANUFACTURING COMPANY, a Mississippi Corporation, Appellee.**

**No. 19169.**

United States Court of Appeals Eighth Circuit.

Oct. 3, 1969.

Rehearing Denied Oct. 30, 1969.

---

Lay, Circuit Judge, dissented.

———◆———

Bruce B. James, Minneapolis, Minn., for appellant.

Clay R. Moore, of Mackall, Crounse, Moore, Helmey & Holmes, Minneapolis, Minn., for appellee.

Before BLACKMUN, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Two separate questions are presented on appeal. The first is whether a provision in a Dealership Agreement between a manufacturer (M-R-S Manufacturing Company) and its dealer (Arrow Equipment, Inc.) effectively disclaims implied warranties in a sale of tractor hauling units. The District Court found the disclaimer effective. The second question, arising from a counterclaim, is whether the monthly rental value of a wrongfully retained tractor is an appropriate measure of damages for the loss of use of the tractor. The District Court applied the monthly rental value as the measure of damages. We affirm.

Arrow Equipment, Inc., is a Minnesota corporation engaged in the business of retailing and servicing industrial machinery. M-R-S Manufacturing Company is a Mississippi corporation engaged in the sale of industrial machinery, including tractor hauling units. Arrow purchased five tractor units from M-R-S pursuant to a written Dealership Agreement executed on May 10, 1965. Arrow, in turn, sold three of these tractor units, but was unable to sell the remaining two. Each of the five tractor units, those in the hands of the ultimate retail buyers and those used by Arrow for demonstration purposes, suffered breakdowns at various times. One of the three tractor units that had been sold by Arrow was subsequently returned to Arrow, the buyer contending that there had been too many breakdowns of the tractor unit to make its operation profitable.

Alleging that the tractor units had acquired an adverse reputation due to the substandard performance of the units sold and demonstrated, Arrow brought an action, including a breach of warranty claim, against M-R-S to recover the diminution in value of the two unsold tractor units and of the returned tractor unit. M-R-S defended against the breach of warranty claim on the ground that M-R-S had limited its express warranty and had adequately disclaimed any im-

plied warranties to Arrow in the Dealership Agreement.

The Dealership Agreement was executed in Flora, Mississippi, and it provides that it is to be governed by Mississippi law. The Agreement contains the following provisions:

"8. *Warranty.* The Dealer agrees to sell machinery under this Agreement only upon order forms or documents which contain the specific and only warranty of the Company as follows:

"'M-R-S Manufacturing Company warrants that it will repair F.O.B. its factory, or furnish without charge F.O.B. its factory, a similar part to replace any material in its machinery which within six months, or 1500 hours of use, whichever occurs first, after the date of first delivery by the Dealer, if proven to the satisfaction of the Company to have been defective at the time it was delivered, provided that all parts claimed defective shall be returned properly identified to the Company's factory, charges prepaid.

"'This warranty is the only warranty, condition or agreement, expressed, implied, or statutory, upon which said machinery is purchased. No other warranty, condition or agreement has been made or exists either expressly, or by implication, all statutory and implied warranties, conditions or agreements being hereby expressly waived and excluded from this transaction, and the Company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages, statutory or otherwise, being hereby expressly waived; and Company shall not have any liability for direct, indirect or consequential damages or delay resulting from any defect.

\*　\*　\*　\*　\*　\*

"'No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever.

\*　\*　\*　\*　\*　\*

"No claim under such Warranty will be allowed by the Company unless such claim is submitted in the form provided by the Company and unless such claim is submitted within thirty (30) days from date of discovery by the first retail purchaser of the defect which is the basis of any claim.

"9. *Delivery, Delays, Damages.* The Company will use its best effort to make delivery to Dealers in accordance with orders, but shall not be liable for any failure or delay therein, or loss of profits arising therefrom, nor for damages or loss arising from the sale or use of its products except to the extent of its warranty herein contained."

It is not disputed that Mississippi gives effect to a non-warranty clause and that such a disclaimer must clearly and unequivocally describe the warranties it disclaims. Dry Clime Lamp Corporation v. Edwards, 389 F.2d 590 (5th Cir. 1968); Grey v. Hayes-Sammons Chemical Co., 310 F.2d 291 (5th Cir. 1962); Stribling Brothers Machinery Co. v. Girod Company, 239 Miss. 488, 124 So.2d 289 (1960). The question here is whether M-R-S effectively disclaimed the warranties running to Arrow.[1]

■ While this Court gives weight to the District Court's interpretation of the provisions of the Dealership Agreement, we are required to reach an independent judgment as to their meaning. The clearly erroneous rule of Fed.R.Civ.P. 52(a) is inapplicable here. United States v. John McShain, Inc., 103 U.S.App.D.C. 328, 258 F.2d 422 (1958), cert. denied, 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70

---

1. The Uniform Sales Act was never adopted by Mississippi and the Uniform Commercial Code did not become effective in that state until March 31, 1968, three years after the sale from M-R-S to Arrow.

(1958); Republic Pictures Corp. v. Rogers, 213 F.2d 662 (9th Cir. 1954), cert. denied, 348 U.S. 858, 75 S.Ct. 83, 99 L.Ed. 676 (1954).

There is no disagreement over the interpretation of Section 8 of the Dealership Agreement. The prefatory sentence of that section clearly instructs Arrow that the quoted language of the section is the only warranty of M-R-S to be given to the ultimate retail buyer. Section 8, standing alone, does not disclaim any implied warranties running to Arrow.

In Section 9, on the other hand, M-R-S seeks to limit its liability to Arrow. Standing alone and without reference to Section 8, the section is ineffective as a disclaimer of implied warranties because there is no clear and unequivocal disclaimer. Dry Clime Lamp Corporation v. Edwards, *supra*; Grey v. Hayes-Sammons Chemical Co., *supra;* Prosser, Warranty of Merchantable Quality, 27 Minn. L.Rev. 117 (1943).[2]

However, by incorporating by reference the disclaimer of Section 8 into Section 9, there is an effective disclaimer as against Arrow. The District Court so interpreted Section 9 finding a clear and unequivocal disclaimer by M-R-S to Arrow. The court reasoned:

"While the disclaimer of Paragraph 8 of the dealership agreement deals only with the warranties running from M-R-S to the ultimate consumer, Paragraph 9 clearly and unequivocally extends said disclaimer to the warranties running fom M-R-S to Arrow, by providing, among other things, that defendant will not be liable to plaintiff for damage arising from the sale or use of its products except to the extent of fulfillment of the warranty made in the dealership agreement. It is apparent that Paragraph 9 was specifically drawn to embrace claims which might be lodged by the dealer against the manufacturer. \* \* \* The

Court is of the opinion, moreover, that the obvious intention of the parties was that Paragraph 9 should operate as a disclaimer of all warranty obligations of defendant to plaintiff except the obligation to fulfill the warranty to the ultimate consumer expressed in Paragraph 8. It is more probable than not that the 'sale or use' language of Paragraph 9 was employed because the parties intended the disclaimer to apply to damages arising out of all possible dispositions of defendant's products and the only possible disposition of said products which occurred to either of them was 'sale or use.' "

Although the incorporation by reference could have been made with greater clarity, it is the opinion of this Court that the Mississippi Court would apply the same reasoning that was applied by the District Court. M-R-S clearly intended to limit its liability in Section 9, and Arrow could not have interpreted that section otherwise. Moreover, it appears to be the intention of the parties that M-R-S would give to Arrow the same warranty as it gave to the ultimate retail buyers. There is no reason or indication why M-R-S would give a greater warranty to a dealer than to the ultimate retail buyers. This Court thinks that the Mississippi Court would interpret Section 9 as incorporating the disclaimer as against Arrow.

The second question raised on this appeal concerns the appropriate measure of damages for the loss of a wrongfully retained tractor. This question arises from a separate transaction. M-R-S delivered a tractor to Arrow pursuant to an agreement which provided that if Arrow could not sell or rent the tractor within 120 days, the tractor would have to be returned to M-R-S. Arrow did not sell or rent the tractor. M-R-S demanded the return of the tractor after the expiration of the 120-day period, but

2. See also, Acker v. Hopfeld, 416 P.2d 953 (Okl.1966); Miller Rubber Co. v. Blewster-Stevens Serv. Station, 171 Ark. 1179, 287 S.W. 577, 59 A.L.R. 1237 (1926) Annot. 59 A.L.R. 1239 (1929).

Arrow did not return the tractor until seven and one-half months later.

When Arrow brought its action against M-R-S, M-R-S counterclaimed to recover damages for loss of use of its tractor. The District Court held Arrow liable for damages measured by the reasonable rental value of the tractor for the seven and one-half month period of wrongful retention.

Arrow contends on appeal, as it did in the District Court, that where the amount of loss cannot be fixed with certainty, the measure of damages is the accrued interest on the value of the property during the period of wrongful retention.

We agree with the District Court that the appropriate measure of damages for the loss of use of the tractor is the reasonable rental value of such tractor. National Dairy Products Corporation v. Jumper, 241 Miss. 339, 130 So.2d 922 (1961). 22 Am.Jur.2d, Damages, § 155 (1965). We also feel that the District Court, applying this measure of damages, fairly ascertained the loss recoverable.

Judgment affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent. The law in Mississippi in my judgment requires a reversal on the disclaimer issue. The law in Mississippi is that " * * * [t]he disclaimer must clearly and unequivocally describe the warranties it disclaims, and uncertainties in the language used must be resolved against the disclaimer." Grey v. Hayes-Sammons Chem. Co., 310 F.2d 291, 300 (5 Cir. 1962). The district court's opinion demonstrates that the disclaimer was equivocal and not clear. The district court stated:

> "It is more *probable* than not that the 'sale or use' language of paragraph '9' was employed because the parties intended the disclaimer to apply to damages arising out of all possible dispositions of defendant's products and the only possible dispositions of said products which occurred to either of them was 'sale or use.' " (My emphasis.)

The majority opinion acknowledges that the incorporation by reference of section 8 into section 9 which is necessary to find an effective disclaimer, "could have been made with greater clarity."

I would hold that disclaimer as to the retail dealer is patently ambiguous and equivocal and "construing it strictly" (310 F.2d at 301) does not apply to plaintiff in this case. I would remand the case to the trial court to ascertain whether any implied warranty of merchantable quality or fitness for use has been breached and if so the damages, if any, that may have proximately resulted therefrom.