TEAMSTERS, LOCAL UNION NO. 688, Affiliated With the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a Labor Organization, Plaintiff-Appellant,

v.

CROWN CORK & SEAL COMPANY, INC., Defendant-Appellee.

No. 73–1084.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1973.

Decided Dec. 26, 1973.

Rehearing Denied Jan. 18, 1974.

Earl B. Wilburn, St. Louis, Mo., for appellant.

Edwin D. Akers, Jr., St. Louis, Mo., for appellee.

Before LAY and BRIGHT, Circuit Judges, and EISELE,* District Judge.

BRIGHT, Circuit Judge.

Teamsters Local Union No. 688 (the Union), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, brought this breach of contract action against Crown Cork & Seal Company, Inc., (the Employer) seeking a money judgment representing the difference between actual contributions made by the Employer to an employees' pension fund after April 1970, and the greater amounts allegedly required by the then-existing collective bargaining agreement between the parties. Federal jurisdiction rests on Section 301(a) of the Labor Management Relations Act, 29 U.S. C. § 185(a) (1970). The district court construed the pertinent pension provision of the contract against the Union and denied it relief. The Union brings this timely appeal. We reverse for reasons stated below.

In the collective bargaining agreement between the parties covering a three-year period of March 1, 1970 to February 28, 1973, the article governing pension contribution read:

Effective MARCH 5th, 1969, the Company agrees to contribute to the Central States, Southeast and Southwest Areas Pension Fund the sum of TEN ($10.00) DOLLARS per week for each employee who has been on the payroll thirty (30) days or more.

The Company thereafter (but for a period not exceeding the termination of this Contract) agrees to contribute to said Central States, Southeast and Southwest Areas Pension Fund such amount or amounts as are or may be in the future from time to time required to be paid by other contributory Employers to said Fund for each employee covered by the *Central States Area Local Cartage Agreement.* (Emphasis added.)

The appellee-Employer pursuant to this agreement has paid the pension fund ten dollars per week for each qualified production employee covered by the agreement but has refused to make any additional contributions measured by increased pension contributions in the current Central States Area Local Cartage Agreement. This latter agreement was completed in July 1970, and provided that employer parties pay into a pension fund $11 per week effective April 1970, $12 per week effective January 1, 1971, $13 per week effective June 1, 1972, and $14 per week effective January 1, 1973, for each qualified employee.

As explained by the testimony presented at the trial, this Central States Local Cartage Agreement embodies a labor agreement applicable to employers engaged in the local cartage industry in the metropolitan area of St. Louis, Missouri. Appellee is not in the cartage business, and neither it nor appellant-Local No. 688 has ever been a signatory to the labor agreement covering the cartage industry of metropolitan St. Louis.

The appellant-Union contends that the reasonable interpretation of the provision of the labor contract here in issue would compel the Employer to pay, as pension contributions on behalf of its employees, the same amounts contributed to the pension fund by employers who are bound by the Central States Local Cartage Agreement. As previously noted, the appellee-Employer has paid the pension fund ten dollars per week for each qualified employee as required by the first paragraph of the questioned pension provision but contends that the second paragraph only becomes opera-

* G. THOMAS EISELE, District Judge, Eastern District of Arkansas, sitting by designation.

tive during the contract period if and when it hires truck drivers who are protected by the Cartage Agreement.

The trial court determined the questioned second paragraph to be ambiguous in meaning and subject to the interpretation urged by either party to the contract. Applying principles of contract law, the trial court adopted the Employer's construction of the provision and held that when part of a contract is unclear or open to different constructions, it is construed most strongly against the party who prepared it and at whose urging it was inserted into the contract. *See* Miravalle Supply Co. v. El Campo Rice Milling Co., 181 F.2d 679, 683 (8th Cir.), cert. denied, 340 U.S. 822, 71 S.Ct. 56, 95 L.Ed. 604 (1950). We disagree with this conclusion and hold that the Union has correctly construed this disputed contract provision.

■ According to appellee's argument, since the reading of the questioned terms produces ambiguity of meaning, this court should affirm on the basis of the "clearly erroneous" rule in Fed.R.Civ.P. 52(a). However, Rule 52(a) does not apply to appellate review of a contract issue resting upon the construction of written documents. We must reach an independent judgment as to the meaning of the contract. Dingman v. United States, 429 F.2d 70, 72 (8th Cir. 1970); Arrow Equipment, Inc. v. M–R–S Mfg. Co., 416 F.2d 152, 154 (8th Cir. 1969). *See* Eddy v. Prudence Bonds Corp., 165 F.2d 157, 163 (2d Cir. 1947), cert. denied, 333 U.S. 845, 68 S. Ct. 664, 92 L.Ed. 1128 (1948). Appellee cites the case of St. Louis Typographical Union No. 8 v. Herald Company, 402 F. 2d 553 (8th Cir. 1968), in support of its Rule 52(a) argument; however, that case is distinguishable on its face because there the existence of pension provisions rested solely upon disputed oral testimony.

■ As a basic proposition we note that contract principles of state law do not control in the construction of collective bargaining agreements which are the subject of Section 301(a) suits under the L.M.R.A. The Supreme Court in Textile Workers v. Lincoln Mills, 353 U.S. 448, 456–457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), said:

> We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * Federal interpretation of the federal law will govern, not state law. * * * But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy.

Subsequently, the Court in United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), elaborated further on this doctrine:

> In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve.

Thus, in conformity to this instruction, we need examine with special care the context in which the disputed bargaining agreement was negotiated.

■ The record discloses that an earlier collective bargaining agreement between appellant and appellee effective for three years from March 1, 1967, contained the following provision relating to pensions:

### ARTICLE XXIX—PENSIONS

Effective February 27, 1967, the Company agrees to contribute to the Central States, Southeast and Southwest Areas Pension Fund the sum of eight dollars ($8.00) per week for such employee who has been on the payroll thirty (30) days or more.

Effective March 4, 1968 the Company agrees to contribute to the Central States, Southeast and Southwest Areas Pension Fund the sum of nine

dollars ($9.00) per week for each employee who has been on the payroll thirty (30) days or more.

Effective March 5, 1969 the Company agrees to contribute to the Central States, Southeast and Southwest Areas Pension Fund the sum of ten dollars ($10.00) per week for each employee who has been on the payroll thirty (30) days or more.

The Company thereafter (but for a period not exceeding the termination of this contract) agrees to contribute to the said Central States, Southeast and Southwest Areas Pension Fund such amount or amounts as are or may be in the future from time to time required to be paid by other contributory Employers to said Fund for each employee covered by the Central States Area Local Cartage Agreement.

The eight, nine and ten dollar amounts called for in that 1967 contract generally track the amounts required to be paid for employees protected by the Central States Area Local Cartage Agreement in effect for the period of April 1, 1967 to March 31, 1970. The cartage agreement specified contributions of $9 per week for each qualified employee effective April 1, 1968, and $10 per week effective April 1, 1969.

In preparing a new 1970 contract to cover appellee's employees, the business representative of Teamsters Local No. 688 testified that he copied the last two paragraphs from the pension provision (Article XXIX, *supra*) of the 1967 contract. The Union made no demand for pension increases and the language now in dispute became incorporated into the agreement without discussion by the parties. The Union's representative testified without contradiction that this last paragraph of the pension provision was included in the 1967 agreement at the request of the Union. Neither in 1967 nor in 1970, did the Union represent any truck drivers under its contract with appellee, Crown Cork & Seal Company, Inc., nor, as already noted, was either appellant or appellee a party to the Central States Area Local Cartage Agreement.

In construing the disputed pension provisions of the 1970 agreement, the Employer argues that some significance should be attached to the fact that the Union also represents appellee's office employees under a separate contract. In bargaining sessions held in 1970, the Union successfully negotiated an increase in the pensions for these office workers to ten dollars but did not include language in the pension provision similar to that found in the disputed paragraph. At the same time, no special demands were made for an increase in pension contributions for the production employees. The Employer argues that the subsequent developments tend to establish that the parties intended to contract only for the ten dollar pension rate. We reject this argument.

It is apparent from the record that in the negotiations by the production workers in 1970, those provisions of the earlier labor agreement, including the pension provisions which produced no friction between the Employer and the Union, were carried over and incorporated in the new contract. We assume such a practice to be a normal course in negotiating the renewal of labor-management contracts.

Furthermore, following the instruction of *Steelworkers, supra,* we must look at the intention of the parties as expressed in the 1967 contract and carried over until 1970, and the context which produced the language of the now-disputed pension agreement. Examining the record, therefore, we find that the overall pension provision in the 1967 agreement is in general accord with the maximum pension contributions then stipulated in the Cartage Agreement. The language of the 1967 agreement as modified to reflect only the last applicable (1969) date became the language of the 1970 agreement. The effect of this language served to ensure that production employees of Crown Cork & Seal represented by appellant-Local 688 would receive the same maxi-

mum pension benefits as other Teamster members of unions participating in the Cartage Agreement. Thus, when the Teamsters and the local cartage industry finally concluded an agreement in July of 1970, increasing employee pensions in the cartage industry as of the preceding April, the appellee, Crown Cork & Seal, under its own labor agreement became obligated to make pension contributions equivalent to pension contributions called for in the latest local Cartage Agreement.

We think that the construction of the disputed pension provision of the contract urged by the Union gives it a present vitality applicable to current employees. Conversely, the Employer's argument seems most tenuous—that language in the disputed paragraph stipulating that contributions which are to be paid for each employee covered by the Central States Area Local Cartage Agreements should be taken to refer to future employees who belong to a union which is a party to the Local Cartage Agreement. Such a construction gives the disputed contract provision applicability to a most unlikely contingency. Recognizing the generally hard bargaining by both sides to reach agreement in labor-management relations, we think it unrealistic to conclude that the parties negotiated any pension agreement in this case to cover nonexistent employees.

We believe the teachings of *Textile Workers, supra,* and *Steelworkers, supra,* require federal courts to place a practical and realistic construction upon labor agreements, giving due consideration to the purpose which they are intended to serve. This contract needs to be construed as applying to existing employees, not those to be hired in the future.

Accordingly, we reverse and remand this case to the district court and direct the entry of judgment in favor of the Union for the deficiency in pension contributions. According to the record, that sum amounts to $30,041 from April 1970 through April 1972.

Reversed and remanded.