Tommy L. BARRETT and Theodore A. Burbidge, II, Appellees,

v.

SAFEWAY STORES, INCORPORATED, Appellant.

No. 75–1664.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1976.

Decided July 15, 1976.

John J. Kitchin, Kansas City, Mo., for appellant; Robert W. McKinley, Swanson, Midgley, Gangwere, Thurlo & Clarke, Kansas City, Mo., on brief.

Robert H. Kendrick, Kansas City, Mo., for appellees.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

PER CURIAM.

Appellant, Safeway Stores, Incorporated, defendant below, appeals from an order of the trial court denying its motion for judgment notwithstanding the verdict and, alternatively, for a new trial. Appellees, Tommy L. Barrett and Theodore A. Burbidge, II, plaintiffs below, brought this case under § 301 of the National Labor Management Relations Act, 29 U.S.C. § 185 (1970), asserting that Local No. 782, Retail Clerks International Association, AFL–CIO (Union) had violated its duty of fair representation by failing to take their grievance to arbitration and that Safeway had breached its contract by assigning the appellees to night stock work. The jury found in favor of the Union but against Safeway, awarding judgment in the amount of $3,256.33. On appeal, Safeway asserts that the trial court erred in denying its motion because: (1) the evidence presented as to the applicable contract provision shows that Safeway had the right to assign the appellees to night stock work, (2) a judgment against Safeway cannot stand absent a jury finding that the Union violated its duty of fair representation, and (3) there was insufficient evidence to establish that the Union violated its duty of fair representation.

The plaintiffs were both hired in November, 1970, to work in one of Safeway's retail grocery stores in Kansas City, Missouri, as Night Stock Crewmen. It was their duty to replenish and stock shelves from 9:30 p. m. until 6:00 a. m. In May, 1971, Safeway decided to discontinue the use of night stockers at the store where the appellees worked and one other on an experimental basis. The plaintiffs, along with the night stockers at the second store, were assigned to perform their stocking duties during the day shift. In July, 1972, Safeway determined that the experiment was unsuccessful and reassigned all those who had previously been Night Stock Crewmen, including the appellees, to the night shift.

The plaintiffs first protested their reassignment to Safeway's Employee and Public Relations Manager, Roy Solem. They asserted that under the terms of the collective bargaining agreement, all clerks in a store must share the night stocking duties. Mr. Solem refused to alter the plaintiffs' reassignment, stating that Safeway had the right, under the contract, to assign specific clerks to work the night shift. Plaintiffs then complained to their Union Business Agent. He advised them that Mr. Solem was correct in his interpretation of the contract. Plaintiffs then filed a grievance with the Union. The Union, after due consideration, including consultation with legal counsel, found no contractual violation of the collective bargaining agreement and refused to take the matter to arbitration.

Suit was then filed by the plaintiffs, contending that Safeway had breached its duty under § 8.7 of the collective bargaining agreement to divide "[n]ight work * * * equitably among all qualified full-time employees," and that the Union breached its duty of fair representation by refusing to carry their grievance to arbitration. Plaintiffs contend that they were damaged for the reason that by being denied daytime work, granted to other full-time employees

with less seniority, they lost the opportunity to earn premium wages by working overtime at certain times. Safeway and the Union responded with testimony of company and union officials who agreed that § 8.7 does not apply to Night Stock Crewmen and that another contract provision, § 9.3(e), grants Safeway the unqualified right to "designate" which employees will work as Night Stock Crewmen, without an obligation to consider seniority or rotate these assignments.

■ We have reviewed the contract and testimony relating to the bargaining history and recent negotiations,[1] and believe the District Court erred in submitting to the jury the contention that Safeway breached the contract. The facts of the case are not in dispute, the contract is not ambiguous, and the evidence submitted by Safeway and the Union in support of their interpretation of the contract was not contradicted by the plaintiffs with anything other than their personal contrary interpretations.

■ Construction of the contract on the basis of its express language was for the court as a matter of law, *Teamsters Local 688 v. Crown Cork & Seal Co.*, 488 F.2d 738, 740 (8th Cir. 1973); *Slotkin v. Willmering*, 464 F.2d 418, 423 (8th Cir. 1972); *see Motor Carriers Council v. Local 600, Teamsters*, 486 F.2d 650, 653 (8th Cir. 1973), *quoting* Judge Hand in *Eddy v. Prudence Bonds Corp.*, 165 F.2d 157, 163 (2d Cir. 1947) ("appellate courts have untrammelled power to interpret written documents"), and nothing remained for the jury to consider on Safeway's contract defense.

[W]here a contract is clear and unambiguous on its face, or where there is no real

conflict of evidence upon any of the essential facts properly to be considered in construing the contract, and the true meaning of the words used is made clear by such evidence, it becomes the duty of the Court, and not the jury, to construe it.

*Commerce Trust Co. v. Howard*, 429 S.W.2d 702, 705–06 (Mo.1968), *quoting National Corp. v. Allan*, 280 S.W.2d 428, 432 (Mo. App.1955).[2]

■ The plaintiffs' claim rests upon Article VIII, § 8.7 of the collective bargaining agreement, which states in full as follows:

### ARTICLE VIII

*Hours and Overtime*

\*　　\*　　\*　　\*　　\*　　\*

8.7 *Night work shall be divided equitably among all qualified full-time employees. The above shall not apply to qualified employees, who, on their own volition, elect to work after 6:00 P.M. A premium of twenty cents (20¢) per hour shall be paid for all work performed between the hours of six (6:00) P.M. and six (6:00) A.M.* This clause shall not operate to preclude the assignment of part-time employees to night work. It is further understood that full-time employees will be given preference over part-time employees when possible for day work. (Emphasis added.)

The Union and Safeway contend that § 8.7, quoted above, does not apply to employees classified as "Night Stock Crewmen," whose classification is defined in Article IX, § 9.3(e) as follows:

---

1. In considering a motion for directed verdict, we view the evidence in a light most favorable to the nonmovants, granting them the benefit of every reasonable factual inference. *MacDonald Engineering Co. v. Hover*, 290 F.2d 301, 303 (8th Cir. 1961); 5A J. Moore, *Federal Practice* ¶ 50.02[1], at 2329–30 (2d ed. 1975).

2. Although the collective bargaining contract in a dispute under § 301 is governed by federal substantive law, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957), and "construed with

reference to the particular practices, background and millieu which gave rise to its use," *Forrest Industries, Inc. v. Local 3–436, Woodworkers*, 381 F.2d 144, 146 (9th Cir. 1967); *see United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the court may employ principles of state contract law, if compatible with the purposes of § 301, in applying the contract to the facts of a particular case. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

ARTICLE IX

*Classification and Wages*

\* \* \* \* \* \*

9.3 For the Purpose of this Agreement, the terms set forth below shall have the following meaning:

\* \* \* \* \* \*

(e) *Night Stock Crewmen: Those employees designated by the Employer to work regularly* one (1) night or more per week *as night stock crewmen shall receive a premium rate of thirty cents (30¢) per hour for all hours worked that week in addition to their regular hourly rate of pay.* Employees working as night stock crewmen shall not be required to work both Saturday and Sunday nights, on the same weekend and *shall not start work on Sunday until the store is closed to the public.* Night stock crewmen working on Sunday or a holiday as an extension of their shift or at the beginning of their shift shall not be exempt from the Sunday and holiday premium. No night stock crewman shall be required to work both the eve and the evening of a holiday. Night stock crewmen shall not be required to work Easter Eve. (Emphasis added.)

Section 9.3(e), according to Safeway and the Union, has for at least 22 years been interpreted to grant the employer the right to "designate" unilaterally which employees will be "Night Stock Crewmen" and thereby entitle such employees to a 30¢ per hour premium for working night hours during which the store is closed to the public. The phrase "night work," on the other hand, as used in § 8.7, they contend, applies to a different classification of employees who work between 6:00 p. m. and 6:00 a. m. while the store is *open* to the public. Employees doing such "night work" are apparently not confined to restocking shelves and are entitled to only the 20¢ per hour premium prescribed by § 8.7. Thus, according to Safeway and the Union, "Night Stock Crewmen" do not do "night work" and the employer is not obliged to divide the work of Night Stock Crewmen equitably among all qualified full-time employees.

This interpretation of the contract is borne out by four defense witnesses, including the Union President, the Union Business Agent, Safeway's Employee and Public Relations Manager, and Safeway's District Manager. The parties' own mutual interpretation of the contract is entitled to considerable weight; and "[w]hen parties by their uniform conduct over a period of time have given a contract a particular construction, such construction will be adopted by the courts." *Pekar v. Local 181, Brewery Workers,* 311 F.2d 628, 636 (6th Cir.), *cert. denied,* 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1962). Union President Hess testified that in bargaining for the contract in 1971 the Union proposed to change § 9.3(e) to require the employer to designate junior employees as night stockers, but the employers (all chain stores) refused to accept the change and the Union negotiators dropped the demand. Hess also testified that the Union agrees that the "night work" premium of § 8.7 applies only to employees who work during *open* store hours after 6:00 p. m. It does not apply to "Night Stock Crewmen" who work during *closed* store hours as defined in § 9.3(e). Union Business Agent Williams testified in accord with President Hess's interpretation that the employer has an unrestricted right to designate which employees will work as "Night Stock Crewmen" after the store is *closed* to the public. Safeway Employee and Public Relations Manager Solem, who had been in that position for nineteen years, testified that Safeway has always designated which employees will be "Night Stock Crewmen" and has never rotated or divided such work among all full-time employees. This interpretation was also corroborated by Safeway's District Manager Lanham, an employee of Safeway for 29 years.

The plaintiffs introduced no evidence as to the meaning or history of the disputed contract provisions or shop practices over the years at Safeway. They simply related to the jury their personal impressions of the meaning of § 8.7 from a reading of the contract. We believe that the evidence, even if viewed in a light favorable to the

plaintiffs, amply resolved the relationship between § 8.7 and § 9.3(e) of the collective bargaining agreement in favor of Safeway and the Union to require direction of the verdict against the plaintiffs in Safeway's favor.

■ Our disposition of the contract defense eliminates the need to consider Safeway's remaining contentions.[3] The judgment of the District Court in favor of the plaintiffs is reversed and the case remanded for entry of judgment in favor of Safeway, notwithstanding the jury verdict.

Reversed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent.

In my judgment, the District Court properly submitted the question of whether Safeway had breached the collective bargaining agreement to the jury. There was a clear conflict between Article IX, § 9.3(e) of the Agreement and Article VIII, § 8.7. It was appropriate to ask the jury to resolve these ambiguities in the light of all of the evidence. There was evidence in the record, as the majority opinion points out, which tended to support the company's interpretation of the collective bargaining agreement. On the other hand, there was evidence indicating that the Union officers acquiesced in that interpretation only because the night stockers were a minority in the Union.

A new trial is necessary, however, because the jury verdicts were inconsistent.

At the close of the evidence, the trial court instructed the jury that:

[i]f you find that the defendant Union Local 782 violated its statutory duty fairly to represent plaintiffs in respect to [their] grievances * * *, and further find that defendant Safeway Stores, Incorporated violated the Collective Bargaining Agreement * * * and if you further find that as a direct and proximate result of such violation that plaintiffs were damaged, then you shall find in favor of plaintiffs and against defendant Safeway Stores * * *.

The court then instructed:

If you find that defendant Union Local No. 782 violated its statutory duty fairly to represent plaintiffs in respect to the grievances * * *, and further find that as a direct and proximate result of such failure that plaintiffs were damaged, then you shall find in favor of plaintiffs and against defendant Union Local No. 782 * * *.

The jury was given the following four general verdict forms upon which to record their findings:

■ We the jury, in the above entitled cause, on Count I find all issues against the plaintiffs and in favor of the defendant Local No. 782 Retail Clerk Int'l. Assn., AFL–CIO.

■ We the jury, in the above entitled cause, find the issues for the plaintiffs and against the defendant Local No. 782 Retail Clerks Int'l. Assn., AFL–CIO on Count I and assess plaintiffs actual damages against said defendant in the sum of

3. We recognize merit in Safeway's additional contention that the jury verdict in favor of the Union "on all issues" was, in probable effect, a finding that the Union did not breach its statutory duty of fair representation, and that such a finding foreclosed a breach of contract verdict against Safeway for failing to designate night stock crewmen "equitably." A union employee, in order to recover damages against an employer in a § 301 suit for breach of the collective bargaining agreement where, as here, the grievance has not been taken through existing arbitration machinery, must first prove that the union breached its statutory duty of fair representation in failing to prosecute the griev-

ance. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 564–567, 96 S.Ct. 1048, 1057–1058, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Butler v. Local 823, Teamsters,* 514 F.2d 442, 447 (8th Cir. 1975); *Richardson v. Communications Workers,* 443 F.2d 974, 981 (8th Cir. 1971).

The verdicts returned by the jury are legally inconsistent with the instructions submitted by the court before the jury retired to deliberate, but our disposition of the case on the merits of the contract claim precludes the necessity of any further elaboration on this issue.

$_____. We further assess exemplary damages against the defendant Local No. 782 Retail Clerks Int'l. Assn., AFL–CIO in the sum of $_____.

■ We the jury, in the above entitled cause, on Count I find all issues against the plaintiffs and in favor of the defendant Safeway Stores, Inc.

■ We the jury, in the above entitled cause, find the issues for the plaintiffs and against the defendant Safeway Stores, Inc. on Count I and assess plaintiffs actual damages against said defendant in the sum of $_____.

During their deliberation, the jury sent to the court several written questions, including one which asked:

Is it possible to render [a] verdict for one defendant and not the other?

Over the objection of the appellant, the court replied in writing, "Yes."

The jury then returned verdict form number one, finding all issues against the plaintiffs and in favor of the Union, and form number four, finding all issues for the plaintiffs and against Safeway. The jury also awarded plaintiffs $3,256.33 assessed against Safeway.

In its motion for judgment notwithstanding the verdict or for a new trial, Safeway argued, *inter alia,* that the jury's verdict finding "all issues against the plaintiff and in favor of the defendant Local No. 782" indicated that the jury had determined that the Union had not violated its duty of fair representation. This determination, Safeway argued, precludes, as a matter of law, any verdict against Safeway.

In its order denying these motions, the trial court initially recited the two instructions set forth above. The court then stated:

In returning a verdict in favor of the defendant Local Union No. 782, the jury was required to find either (1) that defendant Local Union No. 782 did not violate its statutory duty to represent the plaintiffs, or (2) that as a direct and proximate result of such failure, plain-

tiffs were *not* damaged. It is quite apparent, from the jury's verdict against defendant Safeway Stores, that a finding was made that defendant Local Union No. 782 did in fact violate its statutory duty to represent the plaintiffs, but that as a direct and proximate result of the violation plaintiffs incurred no actual damages. The evidence provided a substantial basis for this latter finding in that the grievance would have been denied even if it were fairly and vigorously presented by the Union.

The law is clear that it must be assumed, in the absence of exceptional circumstances not stated or ·shown to be present in the case at bar, that the jury understood and properly applied the clear instructions in arriving at its verdicts. * * * Thus, it should be concluded that the verdicts are not inconsistent. (Emphasis included; citations omitted.)

The law is well established that in § 301 suits in order to recover damages against an employer for breach of a collective bargaining agreement where, as here, the grievance has not been considered through the existing binding arbitration procedures, a plaintiff must first prove that the union violated its statutory duty of fair representation in failing to pursue this claim through the grievance procedures. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 564–567, 96 S.Ct. 1048, 1057–1058, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Butler v. Local U. 823, Int. Bro. of Teamsters, etc.,* 514 F.2d 442, 447 (8th Cir. 1975); *Richardson v. Communication Workers of America,* 443 F.2d 974, 981 (8th Cir. 1971).

The jury's selection of verdict form number one, finding *all* issues against the plaintiffs and in favor of the Union, must be read to mean exactly what those words state: that the jury found that the Union had not violated its duty in failing to take the appellees' grievance to arbitration. The jury's subsequent choice of verdict form number four, finding liability and assessing damages against Safeway, provides no sup-

port for the District Court's conclusion that the jury also felt that the Union had violated its duty. The selection of these two verdict forms supports only the conclusion that the jury was confused as to what its responsibilities under the law were and, thus, returned inconsistent verdicts.

This conclusion is supported by several factors. First, the instructions given did not unambiguously state that the jury must find initially that the Union violated its duty of fair representation before it considers the employer's liability. Second, the jury's question to the court asking whether it could find for one defendant and not the other indicates that the jury was uncertain as to the applicable law. Although the District Court's affirmative response is theoretically correct, in that the jury could find only against the Union and not against Safeway, the answer could also lead the jury to believe that it could legally find for the Union but against Safeway. Finally, the verdict forms themselves did not set forth the requirement that the Union be initially found liable.

In the face of these inconsistent verdicts, the present judgment cannot stand and a new trial is necessary. *See Wood v. Holiday Inns, Inc.,* 508 F.2d 167, 175 (5th Cir. 1975); *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir. 1970).

I would reverse and remand for that purpose.